Raymond L. ANDREWS and Joyce E. Andrews, as Co–Administrators of the Estate of Kristen Jo Andrews, Petitioners,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–2126V.

United States Court of Federal Claims.

July 19, 1995.

Jeffrey D. Swick, Columbus, OH, for petitioners.

Glenn A. MacLeod, Washington, DC, with whom was Frank W. Hunger, Asst. Atty. Gen., Helen M. Goldberg, Director, John Lodge Euler, Deputy Director, and Charles R. Gross, Asst. Deputy Director, for respondent.

## ORDER

TIDWELL, Judge:

This case is before the court on respondent's motion for review of Special Master Richard Abell's April 20, 1995 decision awarding damages to the estate of Kristen Jo Andrews for pain and suffering caused by her vaccine related injuries. For the reasons set forth below, this court affirms the special master's decision.

## FACTS

The facts of this case are not in dispute. On October 1, 1990, petitioners filed a claim for compensation under the National Childhood Vaccine Compensation Act (the "Vaccine Act" or the "Act"), 42 U.S.C. §§ 300aa–1 to 300aa–34 (1988 & Supp. V 1993). Petitioners alleged that their daughter, Kristen Jo Andrews, suffered from a residual seizure disorder and mental retardation as a result of her August 9, 1960 Diptheria–Tetanus–Pertussis ("DTP") vaccination. On November 24, 1992, respondent filed a report recommending compensation on the grounds that petitioners had shown a presumptively vaccine related residual seizure disorder, and that there was not a preponderance of the evidence that Kristen's injury was due to factors unrelated to her August 1960 vaccination.

On April 5, 1993, before the amount of compensation to be paid was finally determined, Kristen died from cardiopulmonary heart failure. The court ordered petitioners to file the affidavit of a medical expert stating whether, to a reasonable degree of medical probability or certainty, Kristen's death was connected to her vaccine related injury. Thereafter, petitioners informed the court that they were unable to adequately demonstrate a connection between Kristen's death and her vaccine injury. Nevertheless, petitioners informed the court of their intent to seek an award for Kristen's actual pain and suffering under section 15(b)(2) of the Act.

On April 20, 1995, the special master held that the plain language of the Vaccine Act permitted compensation for Kristen's actual pain and suffering from her vaccine related injuries despite her death from non-vaccine related causes. On May 22, 1995, respondent filed a motion for review of the special master's decision. In support of its motion respondent argued that the Act clearly prohibits the estate of a person who dies from non-vaccine related causes from bringing *or continuing* a petition for vaccine injuries.

## DISCUSSION

■ It is uncontroverted that the petition in this case was properly filed on Kristen's behalf prior to her death. There is also no question that she experienced actual pain and suffering as a result of a vaccine related injury. The sole issue before the court is whether a properly filed claim for actual damages from vaccine injuries survives a non-vaccine related death.

### A. *Standard of Review*

The court has the authority under the Vaccine Act to review petitions and "set aside any findings of fact or conclusion of law ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). Because this case involves the interpretation of the Act, the special master's conclusion that Kristen's estate could maintain her petition after her death will be upheld unless it is not in accordance with the law. *See Neher v. Sec'y of Dep't of Health & Human Servs.*, 984 F.2d 1195, 1198 (Fed.Cir. 1993) (quoting *Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992)); *see also Charette v. Sec'y of Dep't of Health & Human Servs.*, 33 Fed. Cl. 488 (Fed.Cl. May 10, 1995).

### B. *Plain Meaning of the Vaccine Act*

To determine whether the special master erred in awarding damages to Kristen's estate for pain and suffering caused by her vaccine injury, the court must look first to the language of the Vaccine Act. *See, e.g., Jones v. Brown*, 41 F.3d 634, 637 (Fed.Cir. 1994). If the language of the Act is clear, it will be regarded as conclusive. *Staples v. Sec'y of Dep't of Health & Human Servs.*, 30 Fed.Cl. 348, 354 (1994). If, however, the language is ambiguous, the court may then

look to the legislative history to ascertain its meaning.

In interpreting the Act, the court starts with section 300aa–10 which "established the National Vaccine Injury Compensation Program ... under which compensation may be paid for a vaccine-related injury or death." 42 U.S.C. § 300aa–10(a). "Vaccine-related injury or death" is defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa–33(5). The parties agreed that Kristen suffered a vaccine related injury under the Act. The special master found that nothing in the language of "vaccine-related injuries" limits compensation to persons who are living at the time of award. The court is unable to conclude that this interpretation of the Act is "not in accordance with the law." Therefore, unless the Act otherwise specifies that compensation is limited to living vaccine injured persons, the court must uphold the special master's interpretation of the law.

1. *Section 300aa–11(b)(1)(A)*

Pursuant to section 300aa–11(b)(1)(A):

[A]ny person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, *if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.*

42 U.S.C. § 300aa–11(b)(1)(A) (emphasis added). There is no provision under section 300aa–11(b)(1)(A) for the estate of a vaccine injured person to file a petition for compensation. The special master found, however, that the section does not extinguish a properly filed claim if the vaccine injured person subsequently dies. In contrast, respondent's position is that section 300aa–11(b)(1)(A) "defines" the petitioners who may *receive* compensation. In support of its argument respondent refers the court to several references in the Act to "petitioner[s] under section 300aa–11." *See* 42 U.S.C. §§ 300aa–12, 300aa–15.

The court rejects respondent's argument that section 300aa–11(b)(1)(A) "defines" petitioners for the purpose of receiving compensation under the Act. The definition section of the Act is contained in section in 300aa–33. Although the Act defines, *inter alia*, "vaccine-related injury or death," "legal representative," and "manufacturer," it does not define "petitioners." *See* 42 U.S.C. § 300aa–33. The court agrees with the special master that if Congress had intended to "define" petitioners, it would have done so in section 300aa–33. Further, although section 300aa–11(b)(1)(A) limits the class of persons who may *file* a petition under the Act, on its face it does not limit the class of persons who may receive compensation on behalf of an injured person for a properly filed petition. As used in the Act, "file" is a verb. The act of "filing" was complete when Kristen's petition was deposited at the court in accordance with the requirements of section 300aa–11. *See* BLACK'S LAW DICTIONARY 628 (6th ed. 1990). In this case, it is undisputed that the petition was properly *filed* by Kristen's legal representatives prior to her death.

The references in the act to "petitioners under section 300aa–11" do not change the court's conclusion that section 300aa–11(b)(1)(A) is not intended to abrogate the right of Kristen's estate to maintain her properly filed petition and receive compensation on her behalf. Section 300aa–11 contains a number of provisions in addition to section 300aa–11(b)(1)(A). For instance, under section 300aa–11(a)(2) persons with damages greater than $1,000 are prohibited from filing a civil lawsuit against a manufacturer of a vaccine unless they have first filed a timely petition under the Vaccine Act, and section 300aa–11(c)(1) details the required contents for a petition for compensation. If Congress had intended references to "petitioner[s] under section 300aa–11" to mean "petitioner[s] listed under section 300aa–11(b)(1)(A)," it would have said so.

### 2. Section 300aa–15(a)(2)

■ Respondent also argued that section 15(a)(2) of the Act prohibits an estate from receiving an award other than the $250,000 death benefit for vaccine related deaths. Section 300aa–15 sets out the categories of compensation to be paid to a petitioner for a vaccine related injury or death. Sections 300aa–15(a)(1), 300aa–15(a)(3), and 300aa–15(a)(4) list the types of compensation generally available for vaccine related injuries. Section 15(a)(2) provides: "In the event of a vaccine-related death, an award of $250,000 for the estate of the deceased." Respondent argued that section 15(a)(2) defines the compensation available to *all estates*, whether the claim is for a vaccine related injury or a vaccine related death. This argument is wholly without merit.

First, the plain language of section 15(a)(2) makes it applicable only in the event of a *vaccine related death.* In *Sheehan v. Sec'y of Dep't of Health & Human Servs.*, petitioner filed a claim for the vaccine related death of her husband. The special master awarded petitioner the death benefit under section 15(a)(2), and lost earnings and pain and suffering under section 15(b).[1] *Sheehan,* 19 Cl. Ct. 320, 320 (1990). On review this court found that section 15(a)(2) prohibits the estate of a person who suffered a vaccine related death from receiving more than the $250,000 death benefit, and denied petitioner's award of damages for pain and suffering and lost wages. *Id.* at 321.

*Sheehan* was a vaccine related *death* case, not a vaccine related *injury* case. In stating that the court in *Sheehan* "construed section 15(a)(2) as precluding an estate from receiving anything other than the expressly permitted death benefit," respondent blurs the distinction between cases involving vaccine injuries and vaccine deaths. Rather, this court in *Sheehan* construed section 15(a)(2) as precluding an award of anything other than the expressly permitted death benefit in a case alleging a vaccine related death.

The court finds that the special master has correctly interpreted section 15(a)(2) to apply only in the case of a vaccine related death; it

does not apply in the case of an vaccine injured person who does not die from vaccine related causes. Although this court is not bound by the special master's decision in *Vijil v. Sec'y of Dep't of Health & Human Servs.*, No. 91–1132V, 1993 WL 177007 (Fed. Cl. May 7, 1993), the court notes that, in any event, it is distinguishable from the facts in this case. In *Vijil,* the issue before the special master was whether the estate of a person who suffered a vaccine related death could recover unreimbursed medical expenses in addition to the statutory death benefit. *Id.* at *2. The special master held that it could not. *See id.* at *6. The court agrees with the *Vijil* decision that the estate of a person who suffers a vaccine related death is limited to an award of $250,000 under 15(a)(2). This case however is a vaccine related injury case. Section 15(a)(2) is not applicable in a vaccine related injury case; rather compensation is awarded under sections 15(a)(1), 15(a)(3) and 15(a)(4) for post-act injury cases, and under 15(b) for pre-act injury cases.

Based on a review of the Act in its entirety, the court is unable to conclude that the special master's interpretation of the Vaccine Act is not in accordance with the law.

### C. Legislative History

■ When the language of a statute is unclear, the court may consider the legislative history as an aid to interpretation. *See Jones,* 41 F.3d at 640. Further, even where the language is apparently unambiguous, the legislative history can be used to confirm that the court's interpretation of the statute reflects Congressional intent. *See Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395–96 (Fed.Cir.1990); *Staples,* 30 Fed.Cl. at 354.

■ The National Vaccine Injury Compensation Program was established in 1986 against a backdrop of state laws requiring virtually all children to be vaccinated against seven common childhood diseases before entering school. *See* H.R.Rep. No. 908, 99th Cong., 2d Sess. 1, 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. pp. 6287, 6344, 6346. Although

---

1. *Sheehan,* was a pre-Act vaccine death case.

the majority of children benefit from mandatory immunization, the public and Congress were becoming increasingly aware of the "potential hazards of these vaccines and about the serious—and sometimes deadly—consequences they can have." H.R.REP. No. 908 at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6346. Some of the most severe reactions were associated with the pertussis vaccine, which is often administered in a succession of shots known as DPT.[2] H.R.REP. No. 908 at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6347.

With increased awareness of the possible side effects of vaccines, the number of lawsuits filed on behalf of vaccine injured children also increased dramatically. *Id.* Congress recognized that the civil tort system was inadequate for all concerned. Those injured by vaccines faced expensive and time-consuming litigation, and uncertain recoveries. *Id.* Manufacturers were facing difficulties obtaining liability insurance; these difficulties, and the risk of substantial recoveries by victims, increased the possibility that manufacturers would withdraw from the market. H.R.REP. No. 908 at 6–7, *reprinted in* 1986 U.S.C.C.A.N. at 6347–48. This in turn created a risk that vaccines would not be available in the future.

Under the common law, courts routinely held that personal injury actions did not survive the death of either party. *See* Wex S. Malone, *The Genesis of Wrongful Death,* 17 STAN.L.REV. 1043, 1044 (1965). By the time the Vaccine Act was enacted, however, a number of states had adopted statutes providing for the survival of tort actions despite the death of the plaintiff or defendant. *See, e.g.,* D.C.CODE ANN. § 12–101 (1994); MD. CODE ANN., CTS. & JUD.PROC. § 6–401 (1994); N.Y.EST.POWERS & TRUSTS LAW § 11–3.2 (McKinney 1995); VA.CODE ANN. § 8.01–25 (Michie 1994). Under these survival statutes, a cause of action for personal injury is not extinguished with the death of the plaintiff but rather may be continued by the plaintiff's estate. Thus, at the time the Vaccine Act was enacted, claims of vaccine injured

persons survived their death, even when death occurred before a claim was filed.

The Vaccine Injury Compensation Program was designed to replace the state law civil tort system with a simple, fair and expeditious means for compensating vaccine injured persons. The program was established to make awards to "vaccine-injured persons quickly, easily, and with certainty and generosity." H.R.REP. No. 908 at 3, *reprinted in* 1986 U.S.C.C.A.N. at 6344. The intent to be generous is demonstrated in Congress' recognition and acceptance of the fact that persons might be compensated under the Act for illnesses that are not vaccine related. H.R.REP. No. 908 at 18, *reprinted in* 1986 U.S.C.C.A.N. at 6359.

Under the Act, vaccine injured persons are not permitted to file claims in state court unless they have first proceeded under the Act and have rejected the judgment under the Act.[3] 42 U.S.C. § 300aa–11(a)(2)(A–B) and § 300aa–11(a)(3); *see also* H.R.REP. No. 908 at 14, *reprinted in* 1986 U.S.C.C.A.N. at 6355. The Act also provides for substantive changes in the law with respect to liability for vaccine manufacturers. *See* 42 U.S.C. § 300aa–22. It is funded by excise taxes assessed on the sale of childhood vaccines, at rates intended to reflect the relative reactogenicity of each vaccine. *Id.* at 6375.

When the plain meaning of the Act is considered in conjunction with its history it is clear that Congress could not have intended the interpretation urged by respondent. There is nothing fair, expeditious or generous about an interpretation of the Vaccine Act that replaces a state law claim that would survive the death of plaintiff with a claim that would be extinguished upon the death of the claimant. This interpretation is made particularly unjust by the fact that petitioners with injury claims greater than $1000 cannot choose between the two forums but must file a petition under the Act.

Respondent's interpretation also does not further the goal of limiting litigation over vaccine related injury cases. As the court

---

**2.** DPT is a mixed vaccine of diphtheria, pertussis and tetanus toxins. In the instant case, it is the vaccine that caused Kristen Jo Andrew's injuries.

**3.** Persons with claims under $1,000 are not precluded from filing claims in state court.

has noted, vaccine injured persons with claims over $1,000 cannot sue manufacturers in state or federal court unless they have filed a petition under the Act. If the Act is read to extinguish the claim upon the subsequent death of the vaccine-injured person, their estate would presumably be able to file a lawsuit under section 300aa–11(a)(2)(A) and 300aa–21. It is apparent, therefore, that the interpretation urged by respondent is neither fair, expeditious, generous *or* efficient.

Respondent urges the court to consider the "anomalous results" that would occur if the special master's interpretation of the Act is accepted. Under this court's decision the estates of vaccine injured persons who die before a petition is filed will still be unable to file a petition under the Act and must file a claim, if at all, in state or federal court under state causes of action. While this may appear to be unfair, the court notes that the unfairness is not created by this decision, but by the Act, which prohibits an estate of an injured person from filing the claim as an initial matter.

The court notes that vaccine injured persons (as distinguished from persons who die a vaccine related death) can be categorized in three groups. First, there are vaccine injured persons who die before a petition is filed. Under section 300aa–11(b)(1)(A) those persons may not file a petition, although the prohibitions about filing a civil lawsuit would presumably not apply to this group. Second, there are vaccine injured persons who are alive when a petition is filed, but die before judgment. Under the Act, those persons are prohibited from filing a civil lawsuit initially; under respondent's interpretation, death would strip them of all rights to proceed in this court. Third, there are vaccine injured persons who are alive at the time a petition is filed and survive until award. Regardless of the court's holding in the instant case, this group would be entitled to keep any award received even if death occurred one day after judgment.

As between these three groups, there is no reason to suppose that there is a difference between the actual pre-judgment damages suffered by these vaccine injured persons: all may have unreimbursed medical expenses; all may have suffered greatly as a result of their injuries; and, to the extent these persons are adults when vaccinated, all may have lost income as a consequence of their injuries. Respondent argued that the special master's decision creates an anomaly between the first and second groups. The court notes that the anomaly is actually between the first group and the second and third groups, while respondent's interpretation would create an anomaly between the first and second groups and the third group. This distinction was created by Congress when it limited the class of persons who could file an injury claim to those living when the claim is filed. The court further notes that to the extent an anomaly would exist regardless of which interpretation prevails, it is more logical to group together the second and third groups since both are required to file a petition under the Act prior to suing on a state cause of action.

Respondent also argued that the interpretation accepted by the special master would allow the estate of a vaccine injured person to recover more than the estate of a person who suffered a vaccine related death. The court agrees that in individual cases, actual pre-judgment damages may be greater than the statutory death benefit. It is not the court's role, however, to second guess Congress' policy reasons for setting a specified death benefit that need not be proved in vaccine death cases while requiring persons with claims for injury to establish actual damages. Nevertheless, the court notes that depriving a vaccine injured person of compensation for actual damages will not alleviate any unfairness to persons with vaccine death claims whose actual damages exceed the fixed death benefit.

The court notes that respondent has attempted to characterize the special master's decision as crafting an exception to the Vaccine Act. The court believes this is simply incorrect. The special master did not add a new category of claims beyond what was contemplated by Congress; rather, he refused to take a claim away from a party rightfully before the court. The court has considered respondent's remaining arguments and found them to·be without merit.

## CONCLUSION

Respondent failed to establish that the special master's interpretation of the Vaccine Act does not correspond with the plain meaning of the Act. Further, the court finds that the special master's interpretation is supported by the legislative history of the Act. Therefore, the court finds that respondent failed to demonstrate that the special master's decision was not in accordance with the law. Respondent's motion for review is denied. The court sustains the special master's April 20, 1995 order, awarding damages for pain and suffering caused by Kristen Jo Andrews' vaccine related injuries to her estate.

**IT IS SO ORDERED.**