658

Sadie Ann and Malcolm COHN, Individually and as Friends of Nina Ann Cohn, a minor, Petitioners,

v.

The UNITED STATES, Respondent.

No. 90–2611V.

United States Court of Federal Claims.

Sept. 13, 1999.[1]

Peter H. Meyers, Washington, DC, for petitioners. Michelle L. McCone, Student, George Washington University Law School, of counsel.

Eleanor A. Barry, Washington, DC, with whom was Acting Assistant Attorney General Frank W. Ogden, for defendant.

1. This order was originally filed on August 12, 1999, and is being reissued this date pursuant to RCFC 52.1(b) at respondent's request.

## ORDER

MILLER, Judge.

This matter comes before the court on petitioners' motion for review of a special master's decision denying relief under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C.A. §§ 300aa–300aa–34 (1997 & West Supp.1999) (the "Vaccine Act"). The issue for decision is whether the special master improperly denied compensation for a vaccine-related injury where the petition was filed after the individual died of a non-vaccine related cause.

## FACTS

The following facts are undisputed. Nina Ann Cohn was born on December 8, 1959, to Sadie Ann and Malcolm Cohn ("petitioners") after a normal pregnancy and delivery. Within hours after receiving a diphtheria-pertussis-tetanus ("DPT") vaccination on or about February 15, 1960, Nina suffered a gran mal seizure and became comatose. According to petitioners, Nina continued to suffer from numerous petit mal seizures throughout her life for which she took both Phenobarbital and Dilantin. Nina died on May 10, 1986, soon after being diagnosed with lupus.

Petitioners filed suit on October 1, 1990, seeking compensation under the Vaccine Act both for Nina's death and for her pain and suffering. Special Master Richard B. Abell held that, because they could not prove via qualified expert medical testimony that Nina's death was a sequella of a Table Injury or the direct result of her DPT vaccination, petitioners were not entitled to compensation for Nina's death. *See Cohn v. Secretary of DHHS*, No. 90–2611V, slip op. at 3, 1999 WL 391108 (Fed.Cl.Spec.Mstr. May 24, 1999).[2] The special master also denied petitioners' claim regarding Nina's pain and suffering concluding jurisdiction was lacking to hear the claim because no provision under section 300aa–11(b)(1)(A) allows an estate of a vaccine-injured person to file a petition for com-

2. Petitioners concede this issue on review. *See* Pets' Mot. filed June 22, 1999, at 3.

pensation after the person has died. *See Cohn,* slip op. at 4.

Petitioners have filed the instant motion for review only with respect to the special master's jurisdictional decision and do not contest the denial of compensation for Nina's death.

## DISCUSSION

### 1. *Standard for review*

As this appeal raises a question concerning the jurisdictional requirements under the Vaccine Act, it is reviewed *de novo. See Weddel v. Secretary of DHHS,* 23 F.3d 388, 391 (Fed.Cir.1994) (holding that "pure questions of federal law involving statutory interpretation and jurisdictional delineation" are reviewed *de novo).* The Federal Circuit has held that a claim under the Vaccine Act, as a "claim against the United States[,] implicates its sovereign immunity from suit, [and so] the alleged jurisdictional grant must be narrowly construed." *Martin v. Secretary of DHHS,* 62 F.3d 1403, 1405 (Fed.Cir.1995) (citing *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990)); *accord Schumacher v. Secretary of DHHS,* 2 F.3d 1128, 1135 n. 12 (Fed.Cir.1993) (agreeing that section 300aa–11 invokes sovereign immunity and therefore must be strictly construed in favor of Government).

### 2. *Qualifying petitioners under the Vaccine Act*

*De novo* review of statutory construction begins with an examination of the language of that statute. *See Hellebrand v. Secretary of DHHS,* 999 F.2d 1565 (Fed.Cir.1993); *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, ˙109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). With regard to what classes of persons qualify as petitioners, the Vaccine Act provides, in pertinent part:

> [A]ny person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the

Vaccine Injury Table may … file a petition for compensation under the Program. 42 U.S.C.A. § 300aa–11(b)(1)(A).

Court of Federal Claims case law has described the language of section 300aa–11(b)(1)(A) as providing for three qualifying classes of petitioners: (1) living persons who have sustained a vaccine-related injury; (2) those who are the legal representatives of living persons who have sustained a vaccine-related injury; and (3) those who are the legal representatives of estates of persons who died as a result of the administration of a vaccine. *See Buxkemper v. Secretary of DHHS,* 32 Fed.Cl. 213, 225 (1994). Petitioners proffer a fourth qualifying class, namely, those who are the legal representatives of estates of persons who were injured, but did not die, as a result of the administration of a vaccine, but who died before the petition was filed. Thus, the question becomes whether the enumerated classes of qualifying petitioners listed in section 300aa–11(b)(1)(A) are exclusive, or whether section 300aa–11(b)(1)(A) permits inclusion of this fourth class.

Petitioners rely heavily upon two Court of Federal Claims decisions in support of their contention that they qualify as petitioners under section 300aa–11(b)(1)(A). Neither case supports their claim; in fact, both directly contradict petitioners' position. In *Andrews v. Secretary of DHHS,* 33 Fed.Cl. 767 (1995), cited throughout petitioners' motion, a petition was filed on behalf of a living child for pain and suffering due to a vaccine-related injury. Although the child died from non-vaccine-related causes before the amount of compensation to be paid was finally determined, the special master allowed the child's estate to maintain the petition and eventually to recover compensation. In sustaining the special master's order, the court noted that, although "[t]here is no provision under section 300aa–11(b)(1)(A) for the estate of a vaccine injured person to file a petition for compensation, … the section does not extinguish a properly filed claim if the vaccine injured person subsequently dies." *Andrews,* 33 Fed.Cl. at 769. The court emphasized, however, that "[u]nder this court's decision the estates of vaccine injured persons

who die before a petition is filed will still be unable to file a petition under the Act." *Id.* at 772.

In *Buxkemper* the court applied section 300aa–11(b)(1)(A) to a case concerning the eligibility of petitioners to file a claim for pain and suffering on behalf of one injured by a vaccine, but who died from non-vaccine related causes prior to the filing. The court held:

> When reading 42 U.S.C. § 300aa–11(b)(1)(A), it is clear that this section addresses "a person who has sustained a *vaccine-related injury* or the legal representative of such person ..." separately from "the legal representative of any person *who has died* as a result of the administration of a vaccine...." The eligibility determinations for compensation resulting from vaccine-related injuries or vaccine-related deaths clearly are distinguishable in the statute. The first section of 42 U.S.C. § 300aa–11(b)(1)(A) applies to living, vaccine-injured persons, or their legal representatives, versus the second portion of the section, which applies to the legal representatives of those who have died as a result of the administration of a vaccine. Although not directly addressed in the statutory language, this court is persuaded that the conferees, as manifested in the words of the statute and in the legislative history, intended either compensation for individuals who continue to suffer from a vaccine injury ..., or death benefits ... to the estates of those who have died as a result of a vaccine-related injury.

32 Fed.Cl. at 225. The court denied petitioners' claim for pain and suffering on behalf of the estate of the vaccine-injured child insofar as the decedent "fit[ ] neither of the compensable categories described ... above." *Id.* The vaccine-injured child died as the result of a non-vaccine-related cause prior to filing of the petition; thus, under a plain reading of section 300aa–11(b)(1)(A), the vaccine-injured child's estate could not be compensated for his pain and suffering. As the petition in *Buxkemper*, the petition in the instant case was filed subsequent to the death of the vaccine-injured person.

In cases concerning vaccine-related injuries, as opposed to vaccine-related deaths, the period of time in which a petition must be filed—if it is to be filed at all—is unambiguous: To qualify for compensation under the Vaccine Act, a petition for pain and suffering must be filed during the life of the vaccine-injured person. A plain reading of section 300aa–11(b)(1)(A) mandates the conclusion that the Court of Federal Claims lacks jurisdiction to review petitioners' claim for pain and suffering under the Vaccine Act because the petition was filed after the vaccine-injured child had died.

### 3. *Legislative intent*

In addition to making a plain-language argument, petitioners also argue that the legislative history of the Vaccine Act supports their claim. Resort to legislative history, however, is unnecessary because the court does not find section 300aa–11(b)(1)(A) ambiguous. *See Reid v. Department of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (holding resort to legislative history necessary only if "a literal interpretation would lead to an incongruous result"). In any event, the legislative history underlying the Vaccine Act confirms the court's reading of section 300aa–11(b)(1)(A). *See Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392 (Fed. Cir.1990) (stating that legislative history may be consulted to confirm court's statutory reading).

Prior to the enactment of the Vaccine Act, under the common law, courts generally held that a personal injury claim did not survive the death of either party. *See Andrews,* 33 Fed.Cl. at 771. A number of states, however, later passed legislation allowing for the survival of tort claims despite the death of a party. *See, e.g.,* D.C. CODE ANN. § 12–101 (1994); MD. CODE ANN., CTS. & JUD. PROC. § 6–401 (1994); N.Y. EST. POWERS & TRUSTS LAW § 11–3.2 (MCKINNEY 1995); VA. CODE ANN. § 8.01–25 (Michie 1994). At the time the Vaccine Act was enacted, "claims of vaccine injured persons survived their death, even when death occurred before a claim was filed." *Andrews,* 33 Fed.Cl. at 771. Therefore, had petitioners brought the instant action prior to the exis-

tence of the Vaccine Act, they may have been able to recover, albeit in a state court.

The Vaccine Act "was designed to replace the state law civil tort system with a simple, fair and expeditious means for compensating vaccine injured persons." *Andrews,* 33 Fed. Cl. at 771; *see Buxkemper,* 32 Fed.Cl. at 225 (noting that "[c]ourts interpreting the Vaccine Act exclusively have applied federal law"). Under the Vaccine Act, no longer may one bring a vaccine-related injury action in a state or federal court without first filing his claim in the Court of Federal Claims. *See* 42 U.S.C.A. § 300aa–11(2)(A). "[T]he impetus for the Act was the mounting record of injuries, attributed to the vaccine, which had occurred before the Act was written and passed in 1986, and the impact of resulting law suits on the manufacturers and their unwillingness to keep producing vaccine." *Amendola v. Secretary of DHHS,* 989 F.2d 1180, 1183–84 (Fed.Cir.1993).

> In fact, [Congress'] reasoning [was] that, by creating a system which does not require proof of the manufacturer's negligence, this program would have the potential to reverse the spiraling cost of childhood vaccines and the dwindling number of vaccine manufacturers caused by injured individuals seeking relief through the traditional tort system. It believed, therefore, that "the speed of the compensation program, the low transaction costs of the system, the no-fault nature of the required findings, and the relative certainty and generosity of the system's awards [would] divert a significant number of potential plaintiffs from litigation."

*Stotts v. Secretary of DHHS,* 23 Cl.Ct. 352, 358 (1991) (quoting H.R.Rep. No. 99–908, at 13, *reprinted in,* 1986 U.S.C.C.A.N. 6344, 6354). Given that Congress intended to provide a speedy resolution to vaccine-injury claims, while at the same time stem the rising tide of vaccine-related litigation, it is reasonable to presume that in drafting the Vaccine Act, Congress sought, in part, to revert to the common law principle that personal injury claims do not survive the death of the injured party. Thus, the legislative history behind the Vaccine Act suggests that the court's plain reading of section 300aa–11(b)(1)(A) is consistent with Congress' intent to "reverse the spiraling cost of vaccines" by "divert[ing] a significant number of potential plaintiffs from litigation." Petitioners who file an injury claim on behalf of an estate do not qualify for compensation under a plain reading of the Vaccine Act. "While this may appear to be unfair, the court notes that the unfairness is not created by this decision, but by the Act...." *Andrews,* 33 Fed.Cl. at 772.

## CONCLUSION

Accordingly, based on the foregoing, the special master's decision is affirmed. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

No costs on review.