Maria S. ROOKS as Legal Representative
of Randall Tyler Rooks, Petitioner,

v.

**SECRETARY OF The DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.**

No. 93–689V.

United States Court of Federal Claims.

Jan. 29, 1996.

Ronald C. Homer, Boston, Massachusetts, for petitioner.

Caroline G. Elmendorf, Washington, D.C., with whom was Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Gerard W. Fischer, Assistant Director, for respondent.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on petitioner's motion for review of Special Master Millman's August 22, 1995 decision dismissing the petition, with prejudice, pursuant to respondent's motion to dismiss. For the reasons set forth below, the court vacates the decision of the special master and remands the case for further proceedings consistent with this opinion.

## FACTS

Randall Tyler Rooks ("Tyler"), through his mother Maria S. Rooks ("Maria"), filed a claim for compensation on November 8, 1993, pursuant to the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act" or the "Act"), 42 U.S.C. §§ 300aa–1 to 300aa–34 (1988 & Supp. V 1993). Tyler was in utero when his mother was vaccinated for measles, mumps and rubella (the "MMR vaccine"). She obtained her vaccination apparently due to a college enrollment requirement. Maria did not know that she was only one month pregnant with Tyler at the time of the vaccination. Tyler was born with cerebral dysgenesis including agenesis of the corpus callosum. Petitioner claimed that these injuries occurred during the first month to six weeks of the mother's pregnancy and were caused by the MMR vaccine.

Respondent moved to dismiss the petition based on 42 U.S.C. § 300aa–11(c)(1)(A) which requires that in order to be compensated under the Act, an injured person must have "received" a Table vaccine, unless the person contracted polio from someone who received an oral polio vaccine. Respondent argued that Tyler did not "receive" the vaccine because he was not injected nor did he ingest the vaccine. The main issue to be resolved by the special master was whether Tyler "received" the vaccine, although it was not actually administered to him.

On August 22, 1995, the special master dismissed the petition finding that petitioner did not prove by a preponderance of the evidence that Tyler "received" the MMR vaccine because the vaccine was not directly administered to him. The special master reasoned, pursuant to *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), that by including the oral polio "exception" in section 300aa–11(c)(1)(A), Congress did not intend to compensate persons with vaccine-related injuries who were not directly administered the vaccine, except in the case of persons contracting polio from someone who received an oral polio vaccine. *Rooks v. Secretary of Dep't of Health & Human Servs.*, No. 93–689V, 1995 WL 522769 (Spec.Mstr. Aug. 22, 1995). The special master's decision, as it stands, denies relief to all persons with vaccine-related injuries as a result of in utero exposure to vaccines given to their mothers, regardless of whether they could prove vaccine-related injuries.

Petitioner filed a motion for review on September 21, 1995, to which the Secretary responded on October 23, 1995. In support of her motion, petitioner argued that avail-

able medical literature and the definition of "receive" support the proposition that Tyler did in fact "receive" the MMR vaccine. Petitioner further asserted that the intent of Congress behind enacting the statute and the language of the statute itself contemplated recovery for Tyler's situation. Respondent argued that the language of the Act is clear in that there is only one exception to actual administration of a vaccine—the oral polio provision. Respondent further maintained that the special master's decision was consistent with the Act's legislative history, because recovery under the Act was intended only for direct administration of a vaccine. The sole issue before this court, pursuant to the special master's decision and the motion for review, is whether "receive," in section 300aa–11(c)(1)(A), means actual injection or ingestion, or whether it may encompass in utero exposure.

## DISCUSSION

### I. Standard of Review

 Under the Vaccine Act, the court has the authority to review petitions and "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). The standards of review "vary in application as well as degree of deference." *Munn v. Secretary of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992). Findings of fact by the special master are upheld unless they are arbitrary and capricious; discretionary rulings are upheld unless they constitute an abuse of discretion; and legal questions of law are reviewed under the "not in accordance with law" standard. *Neher v. Secretary of Dep't of Health & Human Servs.*, 984 F.2d 1195, 1198 (Fed.Cir.1993) (quoting *Munn*, 970 F.2d at 870 n. 10). The *de novo* standard of review applies to questions of statutory interpretation. *See id.* The special master's decision was based solely on a statutory construction analysis. The special master did not make any findings of fact, such as whether the child in utero was affected by the vaccine. Since this case deals with the special master's legal determination of the meaning of "received" under the Vaccine Act, this court will review the special master's decision *de novo*. The special master's holding that petitioner did not prove by a preponderance of evidence that Tyler "received" the MMR vaccine will be upheld only if it is in accordance with the law. *See id.; see also Charette v. Secretary of Dep't of Health & Human Servs.*, 33 Fed.Cl. 488, 490 (1995).

### II. Statutory Interpretation

#### A. Section 300aa–11(c)(1)(A) of the Vaccine Act

In order to be eligible for compensation under the Vaccine Act, a petitioner must demonstrate "by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1)." 42 U.S.C. § 300aa–13(a)(1)(A). Section 300aa–11(c) of the statute provides:

A petition for compensation under the Program for a vaccine-related injury or death shall contain—

(1) . . . an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died—

(A) *received* a vaccine set forth in the Vaccine Injury Table or, if such person did not receive such a vaccine, contracted polio, directly or indirectly, from another person who *received an oral* polio vaccine, . . . .

42 U.S.C. § 300aa–11(c)(1)(A) (emphasis added). The MMR vaccine is a vaccine listed in the Vaccine Injury Table. 42 U.S.C. § 300aa–14(a)(II).

Although the Vaccine Act does not define "received," the special master found that "received" means by injection or ingestion because of the inclusion of an "exception" for the oral polio vaccine situation. She reasoned that "Congress could very well have expanded the instances in which administration of the vaccine to the injured person would not be a requirement to make out a prima facie case. It did not." *Rooks*, 1995 WL 522769, at *1. She further held that "§ 11(c)(1)(A) unambiguously requires a petitioner to provide evidence that the injured person received a statutory vaccine in order

to make out a prima facie case." *Id.* (citing *Van Houter v. Secretary of Dep't of Health & Human Servs.,* No. 90–1444V, 1991 WL 239056 (Spec.Mstr. Oct. 30, 1991)). She found that "[t]his petitioner cannot do [sic] *since* Tyler did not receive the MMR vaccine" and, thus, dismissed petitioner's claim. *Id.* at *2 (emphasis added).

## B. Plain Meaning and Purpose of the Vaccine Act

■ To determine whether the special master erred in dismissing petitioner's claim, the court must first look to the language of the Act. *See, e.g., Jones v. Brown,* 41 F.3d 634, 637 (Fed.Cir.1994). If the plain meaning of the language is clear, it will be regarded as conclusive. *See Staples v. Secretary of Dep't of Health & Human Servs.,* 30 Fed.Cl. 348, 354 (1994); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). However, if the language is ambiguous, the court may look to the legislative history to ascertain its meaning. *Andrews v. Secretary of Dep't of Health & Human Servs.,* 33 Fed.Cl. 767, 768–69 (1995).

■ Determining a language's plain meaning is not a simple task. The Supreme Court has held that the function of a court in statutory interpretation is "to construe the language so as to give effect to the intent of Congress." *United States v. American Trucking Ass'ns,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). There is no absolute rule for discovering that intention, but words should not be isolated and taken out of context in an attempt to determine their meaning. *See id.* The plain meaning of the words are followed if they sufficiently indicate the purpose of the statute. However, where the plain meaning leads to absurd, futile or unreasonable results, "plainly at variance with the policy of the legislation as a whole," the Supreme Court has followed the purpose, rather than the literal words. *Id.* at 543, 60 S.Ct. at 1063–64; *see also Hellebrand v. Secretary of Department of Health and Human Services,* 999 F.2d 1565, 1570–71 (Fed.Cir.1993). The issue rests on whether the plain meaning of

"received" under section 300aa–11(c)(1)(A) is only by injection or ingestion. "[H]owever clear the words may appear on 'superficial examination'," an investigation of the Vaccine Act's purpose is essential in construing the language and determining whether it is ambiguous. *American Trucking Ass'ns,* 310 U.S. at 543–44, 60 S.Ct. at 1063–64; *see also Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132 (1990) (noting that a court should "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy") (cited by *O–M Bread, Inc. v. United States Olympic Committee,* 65 F.3d 933, 937 (Fed.Cir.1995)).

The purpose of the Vaccine Act was to establish a program in order to compensate vaccine-related injuries or deaths. 42 U.S.C. § 300aa–10(a). "Vaccine-related injury or death" is defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa–33(5). The special master did not reach a conclusion as to whether Tyler's injuries were vaccine-related. Rather, the special master's inquiry stopped once she determined that Tyler did not "receive" the MMR vaccine because he did not ingest nor was he injected with the vaccine. The special master effectively held that a child in utero cannot "receive" a vaccine injected into or ingested by the mother.

■ The policy behind enacting the Vaccine Act was two fold: (1) "to 'offer fair compensation to victims' injured in connection with childhood vaccination programs" and (2) "to insure the 'continued supply of vaccines that are vital to the public health,'" by limiting litigation against vaccine manufacturers. *See McGowan v. Secretary of Dep't of Health & Human Servs.,* 31 Fed.Cl. 734, 738–39 (1994) (quoting H.R.Rep. No. 908, 99th Cong., 2d Sess. 1, 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6348 (other citations omitted)). Pursuant to this policy and the purpose of compensating vaccine-related injuries, the court is unable to conclude that

**6**

the plain meaning of "receive" is unambiguously by injection or ingestion because this interpretation is "plainly at variance with the policy of the legislation as a whole." Within the context of the Act's purpose, the language of clause (c)(1)(A) does not itself clearly settle the issue. The term "received" is ambiguous because it could refer to receipt of the actual vaccine or receipt of the injection or pill to be swallowed. Each is plausible. The latter would deny Tyler the right to prove a vaccine-related injury under the Act while the former would allow him this opportunity. Based on the underlying policy and object of the Act, the court believes that the term "received" should be given broader scope. The court finds that the potential to "receive" a vaccine while in utero exists because such an interpretation would fulfill the purpose behind the statute. Because he may have experienced vaccine-related injuries from his mother's vaccination while he was in utero, Tyler should be given the opportunity to prove the right to be compensated.

## C. Legislative History of the Vaccine Act

■ Where the language of the statute is ambiguous, the court may consider the legislative history as an aid to interpretation. *See Jones*, 41 F.3d at 640. Even where language is seemingly unambiguous, the legislative history may be used to confirm that the court's interpretation of the statute reflects Congressional intent. *See Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395–96 (Fed.Cir. 1990); *Staples*, 30 Fed.Cl. at 354. The court finds the legislative history of the Vaccine Act supports its interpretation that the meaning of "received" encompasses the potential to "receive" a vaccine in utero, furthering the purpose of the legislation.[1]

As a reaction to state laws requiring virtually all children to be vaccinated against seven common childhood diseases before enter-

ing school, Congress established the National Vaccine Injury Compensation Program (the "Vaccine Program" or the "Program") in 1986. *See* H.R.REP. No. 908, 99th Cong., 2d Sess. 1, 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6346; *see also* 132 CONG. REC. 30417 (daily ed. Oct. 10, 1986) (statement of Rep. Walgren). Although mandatory immunization benefited the majority of children, the public and Congress became increasingly aware of "the potential hazards of these vaccines and about the serious—and sometimes deadly—consequences they can have." H.R.REP. No. 908 at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6346; *see also* 132 CONG.REC. 30417 (daily ed. Oct. 10, 1986) (statement of Rep. Walgren).

These serious consequences led to dramatic increases in the number of lawsuits filed against vaccine manufacturers on behalf of vaccine-related injured persons. *See* H.R.REP. No. 908 at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6287, 6347. Congress recognized that the civil tort system was inadequate for all concerned because those injured by vaccines faced expensive, time-consuming litigation and uncertain recoveries. *Id.; see also* 132 CONG.REC. 30121 (daily ed. Oct. 9, 1986) (statement of Rep. Walgren). The 97th and 98th Congresses held hearings during which manufacturers testified that vaccine litigation threatened the availability of vaccines. *See* SUBCOMM. ON HEALTH AND THE ENVIRONMENT, HOUSE COMM. ON ENERGY AND COMMERCE, 99TH CONG., 2D SESS., CHILDHOOD IMMUNIZATIONS 1 (Comm. Print 1986); *see also* H.R.REP. No. 908 at 5, *reprinted in* 1986 U.S.C.C.A.N. at 6346. Such litigation hindered the ability of manufacturers to obtain liability insurance. *See* H.R.REP. No. 908 at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6347; *see also* 132 CONG.REC. 30121 (daily ed. Oct. 9, 1986) (statement of Rep. Walgren). The risk that vaccines would not be available in

---

1. Respondent argued that "[i]n order to extend the class of permissible claims under the Vaccine Act to birth defects ostensibly caused by in utero exposure to a vaccine, a clearly expressed legislative intent is required." Respondent's Brf. at 13. This argument, however, supposes that the plain meaning of "received" is by injection or ingestion. This reasoning is flawed. There is no indication as to the plain meaning of "received."

An investigation of the Act's purpose and legislative history provides a reasonable determination that "received" means more than merely by injection or ingestion. Respondent's argument that a clear legislative intent is required to hold contrary to a provision's plain meaning is not persuasive where the plain meaning is questionable. *See American Trucking Ass'ns*, 310 U.S. at 543, 60 S.Ct. at 1063–64.

the future became prevalent, as manufacturers dropped out of the vaccine market as the number and size of liability claims increased.

In response to these problems, Congress designed the Vaccine Program to supplement the state law civil tort system as a simple, fair and expeditious means for compensating vaccine-related injured persons. The Program was established to award "vaccine-injured persons quickly, easily, and with certainty and generosity." H.R.REP. No. 908 at 3, *reprinted in* 1986 U.S.C.C.A.N. at 6287, 6344; *see also* 132 CONG.REC. 30417 (daily ed. Oct. 10, 1995) (statement of Rep. Walgren that the Vaccine Act is needed for "those children who are the innocent statistics of the necessary war on infectious disease [so they] would not have to go to court to get their medical bills paid"). Congress recognized that some state law liability systems leave many vaccine-related injured persons without legal remedy. H.R.REP. No. 908 at 13, *reprinted in* 1986 U.S.C.C.A.N. at 6354.

> The National Childhood Vaccine–Injury Compensation Act seeks to set up a no-fault compensation system to protect those children who were injured but cannot prove this in a court of law from falling between the cracks. The compensation program also protects the manufacturers from carrying the burden of liability for a vaccination which is inherently risky.

129 CONG.REC.S. 19716 (June 28, 1984) (statement of Sen. Hatfield). Congress' intent to be generous is shown in its recognition and acceptance of the fact that persons might be compensated under the Act for illnesses that are not even vaccine related.[2] *See* H.R.REP. No. 908 at 18, *reprinted in* 1986 U.S.C.C.A.N. at 6359. The Act was not established to compensate for the potential problems with administration of a vaccine, but rather for the adverse effects of the vaccine itself. *See, e.g., Pannell v. Secretary of Dep't of Health & Human Servs.,* No. 94–658V, 1995 WL 432643 (Spec.Mstr. July 7, 1995). Tyler's situation is one in which the adverse effects of the vaccine are questioned. Based on the underlying Congressional in-

tent to protect children and compensate them, the Act's policy certainly supports Tyler's situation.

Congress intended that "the relative certainty and generosity of the system's awards will divert a significant number of potential plaintiffs from litigation." H.R.REP. No. 908 at 13, *reprinted in* 1986 U.S.C.C.A.N. at 6354. The Vaccine Act intends to decrease litigation by requiring persons with vaccine injury claims over $1,000 to first proceed under the Act and reject a judgment before filing a claim in state court. *See* 42 U.S.C. § 300aa–11(a)(2)(A); *see also* H.R.REP. No. 908 at 14, *reprinted in* 1986 U.S.C.C.A.N. at 6355. The Act provides for substantive changes in the law with respect to liability for vaccine manufacturers. For example, it frees manufacturers from liability for not providing direct warnings. *See* 42 U.S.C. § 300aa–22(c). It seeks to lower manufacturers' costs, not by denying compensation to victims, because the program is funded by taxes assessed on the sale of childhood vaccines, H.R.REP. No. 908 at 3, 14, *reprinted in* 1986 U.S.C.C.A.N. at 6344, 6375, but rather by reducing the litigation and insurance costs associated with traditional tort actions. *Schafer v. American Cyanamid Co.,* 20 F.3d 1, 4 (1st Cir.1994).

The case at bar is ripe for litigation because the package inserts that accompany MMR vaccines specifically prohibit the administration of the vaccine to pregnant women or those who might become pregnant within three months of being vaccinated. Congress was aware of this problem, warning in a subcommittee report against the use of the vaccine in such situations. SUBCOMM. ON HEALTH AND THE ENVIRONMENT, HOUSE COMM. ON ENERGY AND COMMERCE, 99TH CONG., 2D SESS., CHILDHOOD IMMUNIZATIONS 30–31 (Comm. Print 1986). This warning affirms the fear and potential of negative effects from the vaccine to a child in utero, for which the Vaccine Program intended to compensate. By denying petitioner's claim and, thus, access to the Program, the goal of limiting litigation over vaccine-related injury

---

**2.** For example, Congress found that even if medical records were incorrect or incomplete, a court could find that time restrictions for reactions to

vaccines in order to be compensated were still met. *See* H.R.REP. No. 908 at 18, *reprinted in* 1986 U.S.C.C.A.N. at 6359.

cases, such as the case at bar, is certainly not achieved.

The original purpose of the bill was "to establish a simple, no-fault, expedited, low transaction cost, nonadversarial, and effective national program for assuring the provision of just compensation to children and others who have sustained vaccine-related injury." S. 2117, 98th Cong., 1st Sess. § 2101(b) (1983). There is nothing fair, expeditious, generous nor efficient about an interpretation of the Vaccine Act that rejects the claim of a child whose only fault was being in utero at a time when his mother was required by law to be vaccinated. This interpretation is made particularly unjust by the fact that petitioner cannot choose between a state forum and the Court of Federal Claims but must first file a petition under the Act. *See Andrews,* 33 Fed.Cl. at 771–72. Tyler is entitled to the opportunity to benefit from the Act's purpose of compensating vaccine-related injuries.

## III. The Special Master's Decision and the Parties' Arguments

### A. The Doctrine of *Expressio Unius Est Exclusio Alterius* Does Not Apply to the Statutory Interpretation of Section 300aa–11(c)(1)(A) of the Vaccine Act.

■ The special master relied on the maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) to find the oral polio "exception" in section 300aa–11(c)(1)(a) as the only means by which the Act "particularly provide[s] for recovery when the injured person did not receive a vaccine directly...." *Rooks,* 1995 WL 522769, at *1. The court finds this rationale to be unpersuasive. There is no support for the interpretation by the special master that since Congress carved out an "exception" for receipt of oral polio vaccines, in utero children do not "receive" vaccines administered to their mothers. While the interpretative maxim of *expressio unius est exclusio alterius* carries weight in statutory construction, *Albright v. United States,* 10 F.3d 790, 793 (Fed.Cir.1993), it is not always dispositive, *see Herman & MacLean v. Huddleston,* 459 U.S. 375, 387 n. 23, 103 S.Ct.

683, 690 n. 23, 74 L.Ed.2d 548 (1983) (citing *SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 350–51, 64 S.Ct. 120, 123–24, 88 L.Ed. 88 (1943)). The Supreme Court noted in *Herman & MacLean* that "the maxim cannot properly be applied to a situation where ... the remedial purposes of the Act[ ] would be undermined by a presumption of exclusivity." *Id.* The Supreme Court has further held that while the maxim

> may serve at times to aid in deciphering legislative intent, [it] long [has] been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.

*SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 350–51, 64 S.Ct. 120, 123–24, 88 L.Ed. 88 (1943). By presuming that the Act only provides for direct administrative situations and, thus, excluding in utero situations, the remedial purpose of compensating vaccine-related injuries would be thwarted.

■ Congress did not include the provision for receipt of oral polio vaccine in order to exclude other situations. An investigation into the legislative history provides support that Congress included the provision for receipt of an oral polio vaccine due to the unusual circumstances by which polio may be transmitted, in other words, not as an exception but rather as an expansion.

> The *oral poliovirus vaccine* (OPV) carries a very small risk that the recipient or his close nonimmune *contacts* will develop paralytic polio....
>
> Parents of infants vaccinated with OPV are at increased risk of infection if they are not immune, because the infant excretes poliovirus in the stool for weeks after immunization.

SUBCOMM. ON HEALTH AND THE ENVIRONMENT, HOUSE COMM. ON ENERGY AND COMMERCE, 99TH CONG., 2D SESS., CHILDHOOD IMMUNIZATIONS 31 (Comm.Print 1986) (emphasis added). Because polio can be transmitted through indirect *contact* with one who has

received the oral polio vaccine and because the goal of the Act is to compensate for vaccine-related injuries, Congress provided an expansion for compensable methods of injury beyond "receipt." Thus, pursuant to its intent, Congress chose to compensate one who has never consented to be vaccinated and probably is unaware he is at risk of contracting a disease from the vaccination, a situation quite similar to the in utero one at hand. The application of the maxim *expressio unius est exclusio alterius* is inappropriate where its use is to preclude the underlying purpose of the statute which, in this case, is to compensate vaccine-related injuries or deaths. *See C.M. Joiner Leasing Corp.*, 320 U.S. at 350–51, 64 S.Ct. at 123–24. Moreover, the court is not convinced of its application where a provision is more appropriately labeled an expansion of a remedy rather than an exception.

Respondent asserted that the special master's decision was "in accordance with law," relying on the "exception" argument regarding the oral polio vaccine provision. Respondent urged that in utero contact was the same as the contact anticipated by the oral polio provision in the statute. The court is not persuaded by this argument. An in utero situation is not one in which two parties have some *contact* with each other. An in utero situation is one in which the child is physically supported by the mother. Everything which the mother ingests is ingested by the child at some point during the pregnancy. *See, e.g.*, YAFFE, FREEMAN & BRIGGS, DRUGS IN PREGNANCY AND LACTATION at xii–xiii (3d ed. 1990). Thus, it is probable that the vaccine could have caused substantial adverse affects to Tyler while in utero. Whether such adverse effects occurred in the case at bar is a fact issue to be determined by the special master.

**B. Strictly Construed, the Statute Provides Compensation for In Utero Situations Where the Injured Person Can Prove a Vaccine–Related Injury.**

■ In support of her analysis, the special master correctly noted that "[i]n enacting [the Vaccine] program, Congress waived the sovereign's immunity and such waiver is to be strictly construed." *Rooks*, 1995 WL 522769, at *1. It is paramount that the government's consent to be sued, a relinquishment of sovereign immunity, be strictly interpreted. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390 (Fed.Cir.1982). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Jessup v. Secretary of Dep't of Health & Human Servs.*, 26 Cl.Ct. 350, 352 (1992) (quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)).

■ The government has consented to be sued for vaccine-related injuries. Strictly construed, the court finds that the Act provides for only two ways to be compensated: (1) *receipt* of a table vaccine or (2) *contact* with one who has received an *oral* polio vaccine. The language may not be expanded, for example, to compensate an injured person who had contact with one who was *injected* with the polio vaccine. *See Staples*, 30 Fed.Cl. at 359. The court finds that "receipt" cannot refer to contact, as with the oral polio provision, otherwise Congress would not have found the need to include the said provision. Moreover, "receipt" cannot necessarily mean only by injection or ingestion, because there is another form of receipt, *i.e.* in utero, *see, e.g.*, YAFFE, *supra*, at xii–xiii, which furthers the Act's purpose.

Petitioner argued that to construe the statute strictly means that because Tyler was in utero at the time that Maria was injected with the vaccine, Tyler "received" the vaccine as required by the statute, otherwise, Congress could have used the word "administered," for it was used in many other sections of the statute. *See, e.g.*, 42 U.S.C. §§ 300aa–13(a)(1)(B), 300aa–14(a), 300aa–15(a). The court agrees that if Congress had meant solely by injection or ingestion, it could have used these words, instead of "received." Respondent, however, claimed that Congress' use of "administered" throughout the Vaccine Act suggests that it intended the injured party ingest or be injected with a vaccine as

a precondition to compensation. For example, respondent noted that administration is used in section 300aa–13 which "provides that compensation will be awarded if a petitioner can establish the matters in section 11(c)(1) and that 'there is not a preponderance of the evidence that the ... injury ... is due to facts unrelated to the *administration* of the vaccine described in the petition.'" Respondent's Brf. at 8 (citing 42 U.S.C. § 300aa–13(a)(1)(B)). The court is not persuaded by this argument because while respondent highlighted a number of sections which utilize the word "administered," *see* Respondent's Brf. at 8–9, respondent failed to recognize that these sections do not control section 300aa–11(c). *See, e.g., Massing v. Secretary of Dep't of Health & Human Servs.*, 926 F.2d 1133, 1135 (Fed.Cir. 1991). Moreover, it is not apparent to the court whether petitioner was afforded the opportunity to prove that Tyler's injuries were *not* due to facts *unrelated to the administration of the vaccine* to his mother while he was in utero.

 As indicated by the legislative history, the Act's purpose is to compensate for the adverse effects of a vaccine itself not its administration. Petitioner noted that in construing a statute strictly and in conjunction with all provisions, Congress chose not to use "administered" in section 300aa–11(c)(1)(A) but rather "received." Pursuant to the purpose and legislative history of the Act, the court is persuaded that this indicates an intent to compensate for receipt beyond injection, ingestion or contact.

### C. The Dictionary Definition of "Receipt" Supports the Conclusion that a Child In Utero Can "Receive" a Vaccine Administered to his Mother.

 Where Congress does not define a term in the statute, a dictionary definition may be relied upon to interpret the language. *See, e.g., Jones*, 41 F.3d at 638. For example, receive means to get, encounter, experience, undergo. WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH 1120 (3d ed. 1994). Petitioner argued that this definition of "receive" supports the proposition that a

child in utero can "receive" a vaccine administered to the mother. The court is persuaded that the potential for a child in utero to "get" or "experience" a vaccine administered to his mother is possible. *See* YAFFE, *supra*, at xii–xiii. Black's Law Dictionary also provides a supporting definition: "to take into possession ...; collect." BLACK'S LAW DICTIONARY 1268 (6th ed.1990). A child in utero can "take into possession" that which is administered to his mother. *See* YAFFE, *supra*, at xii–xiii.

### D. Reliance on the *Van Houter* Case is Inappropriate.

Petitioner insisted that the special master's reliance on *Van Houter v. Secretary of Dep't of Health & Human Servs.*, No. 90–1444V, 1991 WL 239056 (Spec.Mstr. Oct. 30, 1991), in concluding that "[t]he Office of Special Masters has previously held that § 11(c)(1)(A) unambiguously requires a petitioner to provide evidence that the injured person received a statutory vaccine in order to make out a prima facie case," *Rooks*, 1995 WL 522769, at *1, was misplaced. The court agrees. The special master's finding that because Tyler was not actually injected with the MMR vaccine, he did not "receive" the vaccine under the Act cannot be supported by the *Van Houter* case. The facts of *Van Houter* are distinguishable from the facts of the case at bar. In *Van Houter*, petitioner was vaccinated with a rubella inoculation in 1969, when she was almost twelve years old. After she became pregnant in March 1983, she was tested for rubella. The results revealed the presence of the rubella antibody titre which was incorrectly diagnosed as an immunity to the disease. In fact, petitioner was suffering from wild rubella virus during her pregnancy. *Van Houter*, 1991 WL 239056, at *1. Petitioner claimed that as a result, her son, in utero at the time of petitioner's *virus*, contracted the rubella virus. *Id.* Petitioner asserted that "*she* [was] eligible for compensation under the Act because Jacob received a vaccine-related *injury* while in his mother's womb...." *Id.* (emphasis added). Petitioner contended that receipt of the vaccine was not a prerequisite to compensation under the Act, but rather having

the vaccine-related *injury* was the key. *See id.* at *1–2.

In the present case, Tyler was in utero at the time when his mother was injected with the MMR vaccine, not at a time when she was suffering from a disease for which the vaccine was intended to immunize. Petitioner claimed that Tyler received the vaccine, not the disease, and was exposed to the vaccine directly. The language of the Act does not support the proposition that Congress intended to compensate for the spread of diseases for which vaccination is required. Rather, Congress' intent was to compensate for the limited, negative effects of the vaccinations themselves and to decrease litigation against vaccine manufacturers for these negative effects. *See, e.g.,* H.R.REP. No. 908 at 13, *reprinted in* 1986 U.S.C.C.A.N. at 6354. Thus, *Van Houter* does not support the proposition that "received" means administered by injection or ingestion.[3]

### E. The Court Cannot Review Whether the Vaccine Actually Caused Tyler's Injuries Because the Special Master Did Not Make Any Findings as to this Matter.

Petitioner claimed that "an unborn child experiences in his or her body every chemical compound which the mother experiences." Petitioner's Brf. at 3. Petitioner provided support for this proposition, including Dr. Summer Yaffe's DRUGS IN PREGNANCY AND LACTATION. Petitioner's Brf. at 3–4. Respondent however provided information that the vaccine could not have passed to the child in this instance. Respondent's Brf. at 13 n. 13. The court cannot determine whether the

special master considered this evidence because there are no findings of fact.

 Furthermore, respondent attempted to argue the merits of the case that Tyler was an embryo at the time of his mother's vaccination, and thus, the vaccination could not have passed to him. Respondent's Brf. at 13 n. 13. While respondent provided support that a vaccine cannot pass to an embryo, and thus an embryo cannot be said to have "received" the vaccine, the record contained evidence that the vaccine did pass to Tyler. A letter in the record from Dr. Paul Maertens noted that Tyler's injuries were likely the "result of the MMR immunization that was given at two weeks of gestation as it is recommended not to give immunization during a pregnancy." Petitioner's Notice of Refiling Original Petition with Exhibits, Exhibit 3. The special master did not indicate in her decision whether an evidentiary hearing was held to discuss this issue. Moreover, there are no findings of fact as to this matter. Thus, the court may not address these arguments.[4]

### CONCLUSION

 The Vaccine Act provides compensation in two ways. First, causation is presumed and a petitioner may recover if his injury is listed in the Table and it begins to manifest itself within the time period specified in the Table for the Vaccine in question. *Hellebrand,* 999 F.2d at 1567 (citing 42 U.S.C. § 300aa–11(c)(1)(C)(1) (other citation omitted)). Second, "for injuries not listed in the Table, the Act authorizes recovery if the petitioner proves actual causation, or causa-

---

3. Respondent also asserted that another special masters' decision already found that in utero injuries are not compensable under the Act, *Di Roma v. Secretary of Dep't of Health & Human Servs.,* No. 90–3277, 1993 WL 496981 (Spec.Mstr. Nov. 18, 1993). That case involved an award for attorney's fees. The special master in that case noted that petitioner did not present sound legal arguments for the definition of "received." Moreover, petitioner never alleged a Table Injury, nor did petitioner attempt to prove causation. The special master, however, did not provide any support for the conclusion that the Act eliminates "a claim for compensation for an in utero injury." *Id.* at *2. Thus, that case is not persuasive.

4. Respondent further argued that Congress did not intend to compensate for the situation at bar because it used the term "person" throughout the Act. "Congress was clearly aware that it would be necessary to use express language in order to extend the Act to include prenatal injuries." Respondent's Brf. at 8 (citing *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)). This argument is not persuasive. The cases are inapposite. *Roe v. Wade* dealt with entitlement to Fourteenth Amendment protection by the unborn. This case deals solely with a vaccine-related injured person's status as the recipient of a vaccine.

tion-in-fact." *Id.* at 1567–68 (citing 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I) (other citations omitted)). Petitioner has been denied the opportunity to prove Tyler's injury as a result of receiving the vaccine. This denial is "not in accordance with law."

The special master's interpretation of the Vaccine Act does not correspond with the purpose of the Act, nor is it supported by the Act's legislative history. The court finds that the statute provides compensation for in utero receipt where it is proven by a preponderance of the evidence that the child was adversely affected by the vaccine. Thus, factual findings are necessary. Petitioner's motion for review is granted. The court vacates the special master's August 22, 1995 decision which dismissed petitioner's claim. The case is remanded to the special master for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**