# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 12-234V
Filed: August 30, 2013

| | | |
|---|---|---|
| ************************************ | | TO BE PUBLISHED |
| KELLY SCHULTZ, | * | |
| | * | Special Master Zane |
| Petitioner, | * | |
| | * | |
| | * | Motion to Join Party; *In Utero* |
| | * | Recipient of Vaccine; Influenza |
| v. | * | Vaccine; Guillain-Barré Syndrome; |
| | * | Representative Capacity |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| ************************************ | | |

### ORDER GRANTING PETITIONER'S MOTION TO JOIN ADDITIONAL PARTY[1]

This matter is before the undersigned special master on Petitioner's Motion to Join Additional Party ("Motion to Join"). Petitioner, Kelly Schultz ("Petitioner"), filed a petition on April 11, 2012, seeking compensation under the National Childhood Vaccine Injury Act ("Vaccine Act"), as amended, 42 U.S.C. §§ 300aa-1, *et seq.*[2] Petitioner claims that the influenza

---

[1]    Because this decision contains a reasoned explanation for the special master's action in this case, the special master intends to post it on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, § 205, 44 U.S.C. § 3501 (2006). The decisions of the special master will be made available to the public with the exception of those portions that contain trade secret or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would clearly be an unwarranted invasion of privacy. As provided by Vaccine Rule 18(b), each party has 14 days to file a motion requesting the redaction from this decision of any such alleged material. In the absence of a timely request, which includes a proposed redacted decision, the entire document will be made publicly available. If the special master, upon review of a timely filed motion to redact, agrees that the identified material fits within the categories listed above, the special master shall redact such material from the decision made available to the public. 42 U.S.C. § 300aa-12(d)(4); Vaccine Rule 18(b).

[2]    Part 2 of the Vaccine Act established the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 through § 300aa-34 (2006) ("Vaccine Program").

1

vaccination ("flu vaccine") administered to her on September 15, 2009, caused her to suffer from Guillain-Barré Syndrome ("GBS"). Petitioner moves to add her child, L.S., to this case and to seek to be compensated not only for injuries she alleges to have sustained but also injuries it is alleged that L.S. sustained in this single action. At the time of the administration of the vaccine, Petitioner was pregnant with L.S., and carrying the child *in utero*. Petitioner claims, *inter alia,* that as a result of her injuries, medical professionals had to perform an emergency caesarean procedure, at which time L.S. was born. Petitioner seeks to include all the claims for injuries that she contends were the result of administration of this vaccine, those to both her and her child, in this action.

Respondent argues that L.S.'s injuries are not compensable under the Vaccine Act, asserting that the language of the statute indicates that it was Congress's intent to limit recovery under the Act with regard to the administration of a vaccine to a single person irrespective of whether it could be proved that the vaccine received by and caused injuries to others. Having reviewed the record and the parties' arguments, as explained below, Petitioner's Motion to Join is hereby **<u>GRANTED</u>**.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2012, Petitioner filed her petition alleging that she developed Guillain-Barré Syndrome ("GBS") on or about September 25, 2009 as a result of receiving a trivalent influenza ("flu") vaccine on September 15, 2009. Petition at ¶¶ 2, 3. At the time Petitioner received the flu vaccine she was thirty-three weeks pregnant. *Id.* at 2. The petition stated that beginning September 25, 2009 Petitioner began having complaints of headache and upper back pain and her symptoms progressed over the next several days. *Id.* at ¶¶ 3, 7, 8. On September 29, 2009, Petitoner experienced respiratory distress, was intubated, and admitted to the intensive care unit. *Id*. at ¶ 12. On that same day, Petitioner underwent an emergency caesarean section and her child, L.S., was born at approximately thirty-five weeks and transferred immediately to the neonatal intensive care unit. *Id.* at ¶ 13. On September 30, 2009, electromyography and nerve conduction velocity studies were conducted, the findings of which were consistent with GBS. *Id.* at ¶¶ 15.

On September 11, 2012, Petitioner Kelly Schultz, along with the father of L.S., Peter Schultz, filed a second petition on behalf of their minor son, L.S., for compensation under the Vaccine Act. Petition of L.S. (12-590V). This second petition alleged that L.S. suffered developmental injuries from the flu vaccination that was administered to his mother on September 15, 2009, while he was in utero and which led to the emergency Caesarean section that resulted in his birth. Petition of L.S. (12-590V) at ¶¶ 1-3.

Petitioner filed her Motion to Join on October 31, 2012, in this case, asking the court to allow L.S. to be added as a co-petitioner. By adding L.S. there would be one claim encompassing all injuries as a result of the vaccination administered on September 24, 2009. *See* Petitioner's Motion to Join.

On December 10, 2012, Respondent filed an opposition to Petitioner's Motion to Join

2

("Respondent's Opposition"). Respondent argues that L.S.'s injuries are not compensable. On that same date Respondent filed a Motion to Dismiss in the case filed on behalf of L.S, No. 12-590V ("Respondent's Motion to Dismiss"). Respondent makes the same arguments in that motion that she has made in her Opposition to Petitioner's Motion to Join filed in this case. Respondent argues that Petitioner is barred from filing more than one petition and filing one petition for more than one person relating to a single administration of a vaccine.

Petitioner filed her reply to Respondent's Opposition to Motion to Join on December 20, 2012 ("Petitioner's Reply"). Petitioner also filed an Opposition to Respondent's Motion to Dismiss in Case No. 12-590V. Petitioner argues that the Vaccine Act, a remedial statute, was intended to be liberally construed such that all persons injured by the administration of a particular vaccine were eligible to seek compensation for their alleged vaccine-related injuries.

Having considered the positions of the parties, as explained below, the special master concludes that joinder is appropriate in this case. As explained below, in deciding that L.S. can and should be joined as a party pursuant to RCFC 19 and RCFC 20, the special master has considered and decided that L.S. can state a claim pursuant to the Vaccine Act.[3] The plain language of the Vaccine Act and the legislative history of this remedial statute support this conclusion. The special master also concludes that, consistent with the plain language of the Vaccine Act, only one claim can be made per vaccine administration. As such, L.S.'s claim and Petitioner's claim must be made in the same action. Joinder is proper.

**APPLICABLE LEGAL STANDARDS**

Because there is no specific Vaccine Rule governing joinder, Vaccine Rule 1 gives the special masters broad authority to employ procedures consistent with the Vaccine Rules and the Vaccine Act. *See e.g., May v. Sec'y of Health & Human Servs.,* No. 91-1057, 1995 WL 298554 (Fed. Cl. Spec. Mstr. May 2, 1995) (determining that a supplemental proceeding allowed), *aff'd,* 33 Fed. Cl. 546 (1995), *aff'd,* 93 F.3d 781, 790 (Fed. Cir. 1996). Vaccine Rule 1 also provides that, in connection with matters not specifically provided for by the Vaccine Rules, the Rules of the Court of Federal Claims ("RCFC") shall apply to the extent they are consistent with the Vaccine Rules. Vaccine Rule 1(c). *See, e.g., Silver v. Sec'y of Health & Human Servs.,* 2009 WL 2950503, at *5 (Fed. Cl. Spec. Mstr. Aug. 24, 2009) (finding that RCFC 24 did not apply because it was inconsistent with Vaccine Rule 15 which prohibits intervention).

RCFC 19 and 20 govern joinder of parties. RCFC 19 provides that persons in whose absence the court could not accord complete relief or in whose absence could have their ability to protect their interest impeded must be joined. RCFC 20 provides for the permissive joinder of parties where a party asserts rights to relief jointly, severally or in the alternative or which arise out of a the same transaction or occurrence. The first prerequisite of Rule 20(a), the "same

---

[3]     By granting this motion, the special master has denied the relief sought by Respondent in Case No. 12-590, the dismissal of L.S.'s claim. At the same time, by joining L.S. in this case, the special master renders that claim unnecessary so that that action shall be dismissed by separate order.

3

transaction" or transactional relatedness prong, refers to the similarity in the factual background of the relevant claims. *See Whalen v. United States*, 85 Fed. Cl. 380, 383 (2009) (discussing the Court of Federal Claims Rule for permissive joinder). The second prong of Rule 20(a) requires that plaintiffs have in common "some question of law or fact." *Id.*

## DISCUSSION

I.     **THE PLAIN LANGUAGE AND LEGISLATIVE HISTORY OF THE VACCINE ACT SUPPORT THE CONCLUSION THAT CLAIMS FOR INJURIES TO L.S. UNDER THE VACCINE ACT MUST BE BROUGHT IN THIS ACTION.**

A.   **The Plain Language And Legislative History Support That Injuries To L.S., Despite Being *In Utero* At Time the Vaccine Was Administered, May Be Compensable.**

The pertinent sections of the Vaccine Act and the legislative history demonstrate that L.S.'s injuries may be compensable under the Vaccine Act. To decide whether Congress intended claims such as those of L.S. to be permitted under the Vaccine Act, it is necessary to examine the language of the statute. *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 644 (Fed. Cir. 2011) (quoting *Pennzoil–Quaker State Co. v. United States,* 511 F.3d 1365, 1373 (Fed. Cir. 2008). If the plain meaning of the language is clear, it will be regarded as conclusive. *Staples v. Sec'y of Health & Human Servs.,* 30 Fed. Cl. 348, 354 (1994); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980).

A plain reading of the language of the section governing who are considered Petitioners, 42 U.S.C. § 300aa–11, is unambiguous and leads to the conclusion that L.S.'s injuries could be compensable under the statute. Subsection (b) provides that any person "who has sustained a vaccine-related injury" or the legal representative of such person may file a claim as long as they can show that he or she meets the requirements of subsection (c). Subsection (c) provides that a person must demonstrate he or she received a vaccine. 42 U.S.C. § 300aa–11(b) and (c)(1)(A). Thus, anyone who could potentially demonstrate that he or she did "receive" a vaccine could state a claim.

As Respondent acknowledges,[4] the definition of the term receive means "to take or acquire; get." Merriam-Webster online Webster's II New Riverside Dictionary 981 (1984). Applying this definition to the language of Section 11(c)(1)(A) means that anyone who can be considered to have gotten or acquired the vaccination could state a claim for compensation. *Accord Burch v. Sec'y of Health & Human Servs.*, No. 99-946V, 2010 WL 1676767 (Fed. Cl. Spec. Mstr. Apr. 9, 2010) (defining received to include potentially an infant to whose mother a vaccine was administered while the child was *in utero*). Certainly, it has been recognized that a

---

[4]     Respondent defines the term receive means "to acquire or take…GET." Respondent's Opposition at 7 (citing Webster's II New Riverside Dictionary 981 (1984)).

child being carried *in utero* can acquire certain things from the mother, ranging from nutrition to diseases. *See generally Rooks v. Sec'y of Health & Human Servs.,* 35 Fed. Cl. 1, 9 (1996) (discussing child in utero being supported by mother). Thus, if the child can prove that he or she received the vaccine through administration to his or her mother, claims for injuries to this child could be compensable.[5]

Respondent agrees that the plain language of the statute is unambiguous but argues that the term "received" in Section 11(c)(1)(A) is synonymous with the term "administered" as used in other sections of the Act, such as Section 11(b)(2).[6] Respondent's Opposition at 7. Respondent contends that the individual to whom the vaccine is administered is the only person who can file a claim. *Id.* Contrary to Respondent's argument, the term "received" in that section has not been modified or restricted to only those who directly receive a vaccine. As a result, anyone who can show that he or she has received a vaccine, regardless of the manner of receipt, can state a claim that may be compensable under the Vaccine Act.

That the term "receive" was used in Section 11(c)(1)(A) whereas the term "administer" was used in Section 11(b)(2) is significant. As a general rule, that Congress used certain language in one part of a statute and different language in another indicates that Congress intended there be different meanings accorded. *Sosa v. Alvarez–Machain,* 542 U.S. 692, 711, n. 9 (2004); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S.Ct. 817, 825 (2013). The definition of the word receive, "to take or acquire; get" is not the same as the definition of administer, which is "to give or apply in a formal way." Merriam-Webster online Webster's II New Riverside Dictionary 981 (1984).

Applying this principle and these definitions to the language of Section 11 means that whereas Congress intended that there be only one claim in connection with the administration of a vaccine, having used the term administered in Section 11(b)(2), Congress did not intend to limit that claim to the single person who was administered the vaccine or received it directly.[7] Rather, in using the term received in Section (c)(1)(A), Congress intended that anyone that could show he or she received the vaccine, in whatever manner, would be eligible to seek compensation.

---

[5]    In reaching this conclusion, the special master makes no decision as to whether L.S. has demonstrated that he did receive the vaccine and that his claim is compensable and this decision should not be construed as doing so. Rather, this decision recognizes that such a claim could be compensable so that L.S. has stated a claim upon which relief may be granted, and the claim can and should proceed and not be dismissed.

[6]    Section 11(b)(2), which sets forth the "one petition rule," provides that thre can only be one claim for each administration of a vaccination.

[7]    That Congress did not intend to limit a claim to a single person is indicated by the fact that Congress did anticipate situations where more than one person might file a claim, specifically in the case of the oral polio vaccine. At the same time, any such claims arising from the administration of such an oral polio vaccine would have to be in a single claim.

5

In addition to the plain meaning of the statutory terms, another aid to interpretation is the legislative history. The legislative history can be reviewed to confirm a court's interpretation of the language of the statute. *Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395–96 (Fed. Cir. 1990); *see United States v. American Trucking Ass'ns,* 310 U.S. 534, 542 (1940) (holding that the function of a court in statutory interpretation is "to construe the language so as to give effect to the intent of Congress."). The legislative history can also be reviewed where the language is ambiguous to understand the meaning of particular provisions. *Rooks,* 35 Fed. Cl. at 5-6; *Castaneda v. Sec'y of Health & Human Servs.,* No. 11-749V, 2012 WL 1722346 (Fed. Cl. Spec. Mstr. Apr. 24, 2012).

Review of the Vaccine Act's legislative history demonstrates that it is consistent with Congressional intent to interpret the Act as permitting L.S.'s claim to proceed here along with claims of his mother. The Vaccine Act is a remedial statute. *Cloer v. Sec'y of Health & Human Servs. (Cloer II),* 675 F.3d 1358, 1362 (Fed. Cir. 2012) (en banc). When Congress enacted the Vaccine Act its intent was to create a program that resulted in awards being made "quickly, easily, and with certainty and generosity." H.R. Rep. No. 99-908, *reprinted* in 1986 U.S.C.C.A.N. 6344, 6344. As its structure reflects, the Vaccine Program was "intended to be expeditious and fair" and "to compensate persons with recognized vaccine injuries without requiring the difficult individual determinations of causation of injury." *House Report* at 12-13, *reprinted in* 1986 U.S.C.C.A.N. at 6353-54 ("The Committee anticipates that the speed of the compensation program, the low transaction costs of the system, the no-fault nature of the required findings, and the relative certainty and generosity of the system's awards will divert a significant number of potential plaintiffs from litigation.").

Because it is a broad remedial statute, the Vaccine Act and its provisions are to be construed in a manner that effectuates that underlying spirit and purpose. *Cloer,* 675 F.3d at 1362; *see also Flowers v. Secretary of Health & Human Servs.,* 49 F.3d 1558, 1562 (Fed. Cir. 1995); *Zatuchni v. Sec'y of Health & Human Servs.,* 73 Fed. Cl. 451, 455 (2006), *aff'd,* 516 F.3d 1312 (Fed. Cir. 2008). It is consistent with Congress's purpose of providing an expeditious, fair and generous program from which persons injured by vaccines can recover to interpret Section 11 to include *in utero* claims such as those of L.S. to be compensable under the Vaccine Act. The remedial nature of the program and Congress's clear intent dictates that where there is a question as to whether an individual's claim falls within the statute, that claim should be interpreted as being included. Including L.S.'s claim within the realm of claims that may be compensable under the Vaccine Act is consistent with the Congress's intent and purpose.

Respondent's argument that Congress did not intend for the Vaccine Act to compensate *in utero* claims because Congress did not explicitly provide for them at the time of enactment is inconsistent with Congress's expressed intent for the program to be generous and flexible in awarding compensation. In support of her argument, Respondent refers to the section that provides for a claim where an individual contracts polio through, *inter alia,* contact with an individual that receives the oral vaccine. Respondent's Opposition at 9. Respondent asserts that because the polio situation is the only instance of an indirect injury that Congress included, it is the only instance in which someone other than the person directly administered a vaccine can

make a claim. *Id.* But, given that the section on polio specifically uses the language "did not receive such a vaccine," the polio section actually is intended to include an even broader group of individuals. Those individuals are exempted from having to show that they received a vaccine. That group is separate and apart from those that fall within Section 11(c)(1)(A), who do have to show they received a vaccine. That there may be a separate group that does not have prove they received a vaccine does not mean that L.S. or anyone else is precluded from attempting to establish they received a vaccine and, thus, their claim is compensable.

That Congress intended to compensate claims for injuries that may not have been evident at the time of the Vaccine Act's enactment, such as *in utero* claims, is clear. By authorizing additions of injuries to the table and claims for injuries beyond those listed on the table, Congress expressed its intent to compensate injuries from vaccines in a broad and liberal fashion and anticipated that the nature of claims would change as scientific advances and knowledge became known. In fact, since the time of enactment, certain vaccines that were contraindicated for pregnant women have since been recommended for them. And, certainly claims for injuries as a result of their receipt of vaccines were intended to be covered. To deny claims of injuries caused to Petitioner's then unborn child would be inconsistent with the underlying purposes to ensure payments in a generous fashion under the Act. *See Nat'l Petroleum Refiners Ass'n. v. FTC,* 482 F.2d 672, 689 (D.C. Cir. 1973) (when deciding on Congressional intent, courts are required to interpret the statute in a manner consistent with the policies behind the statute). Because Congress intended that compensation under the Vaccine Program be flexible and generous, permitting L.S.'s claims to be among the claims permitted is consistent with Congressional intent.

### B. L.S.'s Claim is Not Barred By Sovereign Immunity Because To Do So Would Be Inconsistent With the Underlying Purposes of the Vaccine Act, a Remedial Statute.

L.S.'s claim is not barred by the doctrine of sovereign immunity. The doctrine of "sovereign immunity" is a judge-made doctrine from which federal courts have derived certain principles of statutory construction. The first principle is that the federal government, as this nation's "sovereign," may not be sued without its consent. Thus, the waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538 (1980); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1992). The second principle is that the statutory language setting forth such a waiver is to be "construed strictly" or "construed narrowly" in favor of the government. *Nordic Village,* 503 U.S. at 34; *Ardestani v. I.N.S.,* 502 U.S. 135, 137 (1991).

At the same time, although the doctrine of sovereign immunity is a canon of statutory construction, a tool for interpreting the law, it cannot displace other traditional tools of statutory construction. *Richlin Sec. Serv. Co. v. Chertoff,* 553 U.S. 571, 589 (2008); *see also Cloer II,* 675 F.3d at 1358-1362. As the Federal Circuit has explained, the doctrine should not be used to bar claims in a manner inconsistent with the text, structure and purpose of the Vaccine Act. *Zatuchni v. Sec'y of Health & Human Servs.,* 516 F.3d 1312, 1323 n.13 (Fed. Cir. 2008).

As already discussed, Congress intended the Vaccine Act, a remedial statute, to be

7

flexible and encompass a broad range of claims and compensate them generously.  Because it is a broad and generous remedial statute, to construe the waiver of sovereign immunity applicable to it in such a narrow and restrictive fashion so as to preclude claims such as those made by L.S., would be implausible and inconsistent with Congressional intent.  *Id.*  Although as Respondent points out, the Vaccine Act's waiver of sovereign immunity must be "strictly construed in favor of the sovereign," *see* Respondent's Opposition at 4, more important, it must be construed consistent with Congress' intent.  Congress' intent in enacting this remedial legislation was to compensate persons injured by vaccines.  To the extent L.S. can demonstrate that his injuries were caused by the vaccine, Congress intended to compensate them.  The first step is to recognize that Congress, through a waiver of sovereign immunity, intended to permit the claim to proceed.  Consistent with the underlying purposes of the Vaccine Act, L.S.'s claim is one for which there has been a waiver of sovereign immunity.  *Accord Burch v. Sec'y of Health & Human Services*, 99-946V, 2010 WL 1676767 at *7 (Fed. Cl. Spec. Mstr. Apr. 9, 2010).

**C. Section 11(b) Does Not Preclude The Claim for L.S.'s Alleged Injuries As a Result Of the Administration of the Flu Vaccine.**

Section 11(b), which identifies the persons who can make claims, does not preclude claims for injuries to both Petitioner and L.S. from proceeding.  Section 11(b) identifies three categories of individuals who may petition for compensation, *i.e.,* (1) a person who has sustained a vaccine-related injury; (2) the legal representative of such person if such person is a minor or is disabled, or (3) the legal representative of any person who dies as the result of the administration of a vaccine.  42 U.S.C. § 300aa-11(b).  These three categories are connected by the term "or." *Id.*

Respondent asserts that Congress' use of the disjunctive "or" means that Congress intended to prohibit an individual from petitioning in two different capacities.  Respondent's Opposition at 11.  Petitioner contends that §11(b)(1)(A) is not disjunctive and "simply lists those who may petition for compensation."  Petitioner's Reply at 4.  Petitioner asserts that if the statute is interpreted to disallow joinder, then L.S. "would have no recourse for his vaccine-injury," a result inconsistent with the primary purpose of the Act.  *Id.*

Applying the general principles of statutory construction consistent with Congressional intent leads to the conclusion that Petitioner may serve in multiple capacities in the same case.  The general rule is that a disjunctive interpretation is to be given to the term "or" unless such a strict grammatical construction frustrates legislative intent.  *Florsheim Shoe Co., Div. of Interco, Inc. v. United State.,* 744 F.2d 787, 795 (Fed. Cir. 1984); s*ee also Willis v. United States,* 719 F.2d 608, 612 (2d Cir. 1983) ("It is settled that 'or' may be read to mean 'and' when the context so indicates").  In this case, if the term "or" is read in its normal disjunctive sense, then either L.S. or Petitioner would be left without a remedy for alleged vaccine-related injuries.  Such a strict interpretation of this section of the Vaccine Act is inconsistent with the well-recognized Congressional intent that the statute is one that permits claims in a broad fashion.  To construe the statute in the manner Respondent asserts would result in having to choose to compensate some but potentially not all injuries caused by the vaccine, a result contrary to Congress' clearly stated intent.

Recently, the Federal Circuit has recognized that a claim for injury compensation survives the injured person's death. *Zatuchni*¸ 516 F.3d at 1323. In that instance, the claim once held by the individual is converted to a claim by the personal representative of the estate as one standing in the shoes of the deceased. At the same time, the personal representative of the estate may also proceed to make a claim for death benefits, where he or she stands in the shoes of the beneficiaries of the estate. The personal representative in that case in essence made claims for two different purposes, one being made to recover compensation for injuries caused during the deceased's life and the other made to recover compensation for death benefits that accrue to the surviving beneficiaries. That situation is analogous to the situation here, where Petitioner seeks recovery for injuries to herself and also seeks recovery for injuries on behalf of her minor child. Consistent with Congress' intent, L.S.'s and Petitioner's claims should both be permitted. *See generally Figueroa v. Sec'y of Health & Human Servs.,* 715 F.3d 1314 (Fed. Cir. 2013) (recognizing broad interpretation of the Vaccine Act in the context of the claims an individual could pursue).

## II.     ALL CLAIMS IN CONNECTION WITH THE ADMINISTRATION OF THE VACCINE MUST BE JOINED IN A SINGLE ACTION SO THAT JOINDER IS PROPER.

Having determined that a claim made on L.S.'s behalf is one that may be compensable, the special master concludes that joinder of the claims in this action is not only proper but consistent with the Vaccine Act. Vaccine Rule permits the application of RCFC where consistent with the Vaccine Act. Because 42 U.S.C. § 300aa-11(b)(2), the "one petition rule" permits the filing of only one claim for each administration of a vaccine, joinder is the logical manner to effectuate the one petition rule.

Petitioner claims that application of RCFC 20, which governs permissive joinder, applies here. But, in actuality, RCFC 19, which governs mandatory joinder applies heree. Under Rule 19, joinder is appropriate where a court determines that the individual to be joined is "necessary." *Id.* An individual is deemed necessary if the absent person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest. *United Keetoowah Band of Cherokee Indians of Okla. v. United States,* 480 F.3d 1318, 1324 (Fed. Cir. 2007).

Because 42 U.S.C. § 300aa-11(b)(2) prohibits more than one petition from being filed with respect to each administration of a vaccine, if L.S. is not a party to this case, L.S.'s ability to recover will be impeded and impaired. L.S. will have no other means to recover. As such, L.S. is a necessary party. Pursuant to RCFC 19, joinder is appropriate.

And, the standards governing RCFC 20 are also clearly satisfied. RCFC 20 provides that persons "may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any questions of law or fact common to all

9

plaintiffs will arise in the action."

First, both Petitioner and L.S. are claiming injury from the administration of a single vaccine. Thus, both claims arise out of the "same transaction." Second, as the alleged injuries arose out of injuries that Petitioner experienced while she was pregnant with L.S., common questions of fact relating to the administration and progressions of symptoms exist. Joinder is also proper pursuant to RCFC 20.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to join L.S. as a party is hereby GRANTED. A separate order amending the caption shall be issued accordingly.

**IT IS SO ORDERED.**

/s/ Daria J. Zane
Daria J. Zane
Special Master