Jack M. LAWSON and Joyce L. Lawson, as parents and next friends of Jennifer Lawson, Petitioners,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–2455 V.

United States Court of Federal Claims.

Nov. 17, 1999.

Ronald C. Homer, Boston, MA, for petitioners.

David L. Terzian, with whom were Acting Assistant Attorney General David W. Ogden, Helene M. Goldberg, John L. Euler and Gerard W. Fischer, Washington, DC, for respondent.

## OPINION and ORDER

TURNER, Judge.

### I

Petitioners seek relief under the National Vaccine Injury Compensation Program (established pursuant to 42 U.S.C. § 300aa–10) for injuries suffered by and the subsequent death of their daughter, Jennifer Lawson. Applications for and determinations of eligibility for Program compensation are controlled by 42 U.S.C. § 300aa–11 to –16 and –33(2) & (4) (Vaccine Act).

Petitioners allege that Jennifer suffered compensable injuries and eventually died as a result of diphtheria-pertussis-tetanus (DPT) vaccinations. On May 28, 1999, the special master issued a decision denying compensation. The case stands on the petitioners' motion filed on June 25, 1999 for review of the special master's decision. We conclude that the special master's decision must be vacated and the matter remanded for further proceedings.

### II

Jennifer was born on October 23, 1976. Decision (5/28/99) at 2. She received a third DPT vaccination on May 24, 1977. Petitioners assert that within hours of the third vaccination, Jennifer began to sleep for extended periods, became difficult to arouse, was generally disinterested and showed a general lack of response to environmental stimuli and, within two to three weeks, began slumping over. *Id.* at 1–2.

On or about June 11, 1977, Jennifer fell from chair and bruised her head. Thereafter, she "was unable to hold her head upright and lost her ability to roll over and grasp objects." *Id.* at 3. Jennifer was subsequently hospitalized for four days beginning on July 11, 1977 and was diagnosed as having a progressive central nervous system demyelinating disease. *Id.* at 2. A CT scan on July 18, 1977 "showed very mildly enlarged lateral ventricles, areas of diminished density bilaterally in the white matter of the frontal lobes and anterior parietal lobes.... Jennifer did not have seizure activity." *Id.* at 3.

Jennifer's condition never improved. She lost all motor skills and became mentally retarded. "During the years following the administration of the [vaccine], until her death in 1992, Jennifer was unable to ambulate at all on her own. She was confined to a wheelchair, supported totally, or bedridden." Pet. Br. at 3 (citing Pet. Ex. S at 1).

On May 23, 1991, following surgery to correct a scoliosis condition, doctors performed a tracheotomy to help Jennifer breathe. On April 25, 1992, Jennifer suffered from exsanguination due to the rupture of a large blood vessel caused by an old tracheostomy and died.

### III

On October 1, 1990 (prior to Jennifer's death), petitioners filed their initial petition for vaccine compensation alleging that the DPT vaccination caused a Vaccine Table Injury. (Petitioners filed a "Supplemental Submission" on February 12, 1991, prior to Jennifer's death.) Petitioners filed a "Second Supplemental Submission to Petition for Vaccine Compensation" on November 23, 1993 alleging that Jennifer's death in 1992 was a sequela of the vaccine injury alleged in the initial petition. Petitioners also filed a "Third Supplemental Submission" on May 30, 1995 and a "Fourth Supplemental Petition" on September 11, 1995.

The special master found as a matter of law that the large blood vessel rupture resulting from a tracheostomy (i.e., the immediate cause of death) was not an acute complication or sequela for purposes of the Vaccine Act. Thus, she concluded that even if petitioners could satisfy their burden of proving a vaccine injury, they could not prove that Jennifer's hemorrhaging to death was a sequela of the disease.

### IV

In order to establish a prima facie case for compensation under the Vaccine Act, the petitioners must prove, *inter alia*, by a preponderance of the evidence that the child (a)

"sustained or has significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table" or (b) "sustained or had significantly aggravated, any illness, disability, injury, or condition not set forth in the Vaccine Injury Table but which was caused by a vaccine referred to in" (a). 42 U.S.C. § 300aa–11(c)(1)(C)(i) & (ii).

### V

There are two issues that must be addressed to determine whether petitioners may recover. First, it must be determined whether the May 24, 1977 DPT vaccination was followed by a Table injury or, if not, whether the vaccination was the actual cause of Jennifer's subsequent mental retardation. Second, it must be determined whether her death was a sequela of any such vaccine injury.

Petitioners, of course, may not recover any compensation unless they can initially establish either a Table injury or actual causation of injury resulting from a vaccine. But if petitioners can demonstrate such Table injury or actual causation (and if defendant does not prove alternative causation), they would be entitled to recover provable items of damages set forth in 42 U.S.C. § 300aa–15(b) (pertaining to claims with respect to vaccine administrations occurring before enactment of the Vaccine Act) even if they are unable to prove that Jennifer's death was a sequela of an initial vaccine related injury.

The cited statute would permit petitioners (if they can establish vaccine injury from pre-Act administration) to recover up to $30,000 attributable to lost earnings, pain and suffering and attorney fees. If, further, they could establish that Jennifer's death was "vaccine-related," 42 U.S.C. § 300aa–15(a)(2) incorporated in subsection –15(b), they could recover an additional $250,000. But potential entitlement to compensation related to initial vaccine injury does not depend on whether eventual death was also vaccine related.[1]

In her decision, the special master did not resolve the initial Table-injury or actual-cau-

---

1. Petitioners, in their initial petition and in each of four supplements thereto, including two submitted after Jennifer's death, specifically requested "an award of compensation . . . for the vac-

cine-related injury of Jennifer M. Lawson . . . to cover pain and suffering . . . and reasonable attorney's fees and costs, all pursuant to the Vaccine Act."

sation issue but seemed to assume that if death was not a sequela of a presumed vaccine injury, no compensation whatever was recoverable. Thus, we think it appropriate to vacate the master's decision and to remand the matter for findings and conclusions concerning whether Jennifer suffered a vaccine-related injury entitling petitioners to compensation pursuant 42 U.S.C. § 300aa–15(b), and, if so, to make renewed findings and conclusions concerning whether Jennifer's death was vaccine related.

## VI

Based on the foregoing, petitioners' motion for review filed on June 25, 1999 is GRANT-ED. Accordingly, the special master's Decision and Order dated May 28, 1999 is VACATED and this matter is REMANDED to the Office of Special Masters for further proceedings consistent with the foregoing. Pursuant to Vaccine Rule 28, the period of this remand shall not exceed 90 days.