Dory ZATUCHNI, Executrix of the
ESTATE OF E. Barbara SNY-
DER, deceased, Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Respondent.

No. 94–58V.

United States Court of Federal Claims.

Filed Under Seal: Oct. 16, 2006.[1]

Reissued: Oct. 31, 2006.

Ronald Craig Homer, Conway, Homer & Chin–Caplan, P.C., Boston, MA, for Petitioner.

Linda S. Renzi, with whom were Peter D. Keisler, Assistant Attorney General, Timothy P. Garren, Director, Vincent J. Matanoski, Acting Deputy Director, and Gabrielle M. Fielding, Assistant Director, United States Department of Justice, Torts Branch, Civil Division, Washington, DC, for Respondent.

## OPINION AND ORDER

WHEELER, Judge.[2]

### Introduction

This case again is before the Court, this time for review of the Special Master's May 10, 2006 Decision on Remand. In that decision, the Special Master granted in part and denied in part the petition of E. Barbara Snyder[3] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa–1 et seq. (2000) (the "Vaccine Act"). Ms. Snyder suffered from the effects of a 1992 measles, mumps, and rubella ("MMR") vaccination for 13 years before she died in 2005. At issue is whether Ms. Snyder's estate is entitled to economic losses for her vaccine-related injuries from 1992 to 2005, or whether recovery is limited to the death benefit allowed under the Vaccine Act. See 42 U.S.C. §§ 300aa–15(a).

1. Pursuant to Rule 18(b) of the Court's Vaccine Rules, each party is afforded 14 days from the date of issue to object to the public disclosure of any information furnished by that party. Neither party having filed such an objection, the Court today publishes this Opinion and Order without redaction.

2. This case was transferred to Judge Thomas C. Wheeler on December 7, 2005, pursuant to Rule 40.1(b) of the Rules of the Court of Federal Claims.

3. The substituted Petitioner, Dory Zatuchni, is the legal representative of the estate of Barbara Snyder, appointed by the Register of Wills of New Castle County, Delaware on December 20, 2005. Barbara Snyder died in Delaware on April 28, 2005.

This Court earlier found on review of the Special Master's May 2005 decision ("Liability Decision")[4] that the debilitating joint pain and fibromyalgia syndrome ("FMS") that Ms. Snyder experienced from 1992 to 2005 were caused by the rubella component of her vaccination. *Zatuchni v. Sec'y of Health & Human Servs.*, 69 Fed.Cl. 612 (2006). The Court remanded the case to the Special Master to determine whether Ms. Snyder's death was caused by the vaccine, and to set the amount of compensation due Ms. Snyder's estate. *Id.*

The Special Master determined in his Decision on Remand that Ms. Snyder's death was caused by the vaccine, but he ruled as a matter of law that Ms. Snyder's estate could recover only the $250,000 death benefit allowed under 42 U.S.C. § 300aa–15(a)(2). *Zatuchni v. Sec'y of Health & Human Servs.*, 2006 WL 1499982 (Fed.Cl.Spec.Mstr. May 10, 2006) ("Remand Decision"). However, acknowledging the "difficult" and "close" legal question of whether the estate also is entitled to economic losses under 42 U.S.C. §§ 300aa–15(a)(1), (3), and (4), the Special Master commendably made findings of the amounts that would be appropriate if on review these economic loss categories were allowed. *Id.* at *6–8. These additional amounts total $554,323.90, and consist of $174,880.49 in actual reimbursable expenses, $250,000 for pain and suffering, and $129,443.41 in lost earnings. The sum of the death benefit ($250,000) and the economic loss categories ($554,323.90) is $804,323.90.

In a timely motion for review, Petitioner argues that the Special Master's decision awarding only a $250,000 death benefit is contrary to law. Petitioner contends that a plain reading of the Vaccine Act, as well as the Act's underlying remedial intent, should permit recovery of a death benefit and any economic losses caused by the vaccine. Respondent opposes the motion for review, arguing that a petitioner's estate can recover only a $250,000 death benefit under the Vaccine Act when a vaccine is held to be the cause of death.[5] The Court heard oral argument on Petitioner's motion for review on August 17, 2006. The issue of whether a petitioner's estate may recover a death benefit and lifetime economic losses caused by the same vaccination has not been addressed by the U.S. Court of Appeals for the Federal Circuit.

For the reasons explained below, the Court finds that the Special Master's Remand Decision is not in accordance with law. Based primarily on a plain reading of the Vaccine Act, the Court concludes that an eligible petitioner who establishes vaccine-related injuries and a vaccine-caused death is entitled to recover both a death benefit and provable economic losses under the Act. The Court cannot accept Respondent's premise that a woman who suffers 13 years of economic losses during her lifetime somehow forfeits those losses by dying while her case is pending before the Court. Nothing in the Vaccine Act supports such a severe result. The Court therefore vacates the Special Master's conclusion of law that only a death benefit is allowed, but adopts the Special Master's findings regarding Petitioner's economic losses, totaling $554,323.90. The Court enters judgment for Petitioner in the amount of $804,323.90, comprised of the $250,000 death benefit and $554,323.90 in economic losses.

### Factual Background [6]

Barbara Snyder was born on June 15, 1946. On February 10, 1992, at age 45, Ms. Snyder received an MMR vaccination so that she could continue working as a receptionist at the Atlantic City, New Jersey Medical Center. The record before the Court does not indicate any unusual medical history for Ms. Snyder prior to the vaccination. Within

---

4. *See Snyder v. Sec'y of Health & Human Servs.*, 2005 WL 1230787 (Fed.Cl.Spec.Mstr. May 6, 2005). Ms. Snyder died while her case was pending before the Special Master, but her counsel and the Court did not learn of her death until after the Special Master issued his decision.

5. Respondent does not contest that the vaccine caused Ms. Snyder's death.

6. A full recitation of Ms. Snyder's lengthy history of vaccine-related medical problems and diagnoses is found in the Court's earlier decision, *Zatuchni*, 69 Fed.Cl. 612. The facts relating to Ms. Snyder's death are from the Special Master's May 10, 2006 Remand Decision.

two weeks of the vaccination, Ms. Snyder developed a number of medical problems, including a rash, swollen lymph nodes, a fever, and severe pain throughout her joints and muscles. Soon thereafter, Ms. Snyder experienced other symptoms, which her physicians diagnosed as *continuing chronic arthralgia* and FMS attributable to the rubella portion of the MMR vaccination. Over the next 13 years, Ms. Snyder's physical condition deteriorated rapidly and significantly. Despite her best efforts, Ms. Snyder found it impossible to continue working. Eventually, she ambulated only with a walker, and used a motorized scooter when leaving her residence. She required a nurse's aid to assist her with daily living functions.

Barbara Snyder died on April 28, 2005, at age 58. The immediate cause of death was found to be cardio-respiratory arrest due to chronic bronchitis and chronic obstructive pulmonary disease. Ms. Snyder's physician, Dr. Dan Teano, determined that she suffered these health problems as a result of not being able to move and exercise at a normal rate due to her vaccine-related FMS. Ms. Snyder's death certificate listed "Cardio–Respiratory Arrest" as the immediate cause of death, and "Post Rubella Vaccination Syndrome" and "Fibromyalgia" as "Other Significant Conditions Contributing to Cause of Death."

### Special Master's Remand Decision

In determining whether Ms. Snyder's death was vaccine-related, the Special Master relied upon the Federal Circuit's *Capizzano* decision and the Court's February 9, 2006 decision in this case, instructing that evidence contained in the medical records and opinions of the treating physicians is to be "favored in vaccine cases," as these physicians are likely to be in the best position to determine whether a vaccine caused an injury or death. *See Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1326 (Fed.Cir.2006); *Zatuchni*, 69 Fed.Cl. at 623–24. Based on Ms. Snyder's death certificate and the testimony of her primary physician,

Dr. Teano, the Special Master found it to be "more probable than not" that Ms. Snyder's joint pain and FMS were "substantial factors" contributing to her death. (Remand Decision at *4). He further determined that "but for" those conditions, which this Court already held to be vaccine-related, Ms. Snyder would not have died when she did. *Id.* The Special Master concluded that Petitioner satisfied her burden, as described by the Federal Circuit in *Althen* and *Shyface*, to demonstrate that Ms. Snyder's death was "vaccine-caused." *See Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278–79 (Fed.Cir.2005); *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352 (Fed.Cir.1999). (Remand Decision at *4–6).

Because Ms. Snyder's death was found to be vaccine-related, the Special Master awarded her estate the death benefit of $250,000 as provided in 42 U.S.C. § 300aa–15(a)(2). *Id.*[7] After determining Ms. Snyder's vaccine-related economic losses under 42 U.S.C. §§ 300aa–15(a)(1), (3), and (4), totaling $554,323.90, the Special Master ultimately concluded as a matter of law that Ms. Snyder's estate is not entitled to any compensation under those three subsections. (Remand Decision at *24).

### Discussion

#### A. Standard of Review

This Court has jurisdiction under the Vaccine Act to review a Special Master's Decision upon the timely request of either party. 42 U.S.C. § 300aa–12(e)(1)–(2). The Special Master's findings of fact are given deferential review under an "arbitrary and capricious" standard; the legal conclusions are reviewed *de novo* under the "not in accordance with law" standard; the discretionary rulings, such as evidentiary decisions, are reviewed for "abuse of discretion." *See Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992). When reviewing a decision, this Court is empowered to: (1) uphold the findings of fact and conclusions of law and sustain the decision; (2) set aside any findings of fact and conclusions of law "found

---

7. Neither party disputes the Special Master's finding that Ms. Synder's estate is entitled to the $250,000 death benefit provided in § 300aa–15(a)(2). *See* Petitioner's June 9, 2006 Motion

For Review ("June 2006 Motion for Review") at 2; Respondent's July 10, 2006 Memorandum in Response to Motion for Review ("July 2006 Response") at 5.

to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...";  or (3) "remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa–12(e)(2)(A)–(C); *Althen,* 418 F.3d at 1277–78. While this Court may not simply substitute its judgment for that of the Special Master, when the Special Master misinterprets or misapplies the applicable law, the Court must vacate any erroneous determination unless the error would not affect the outcome. *Carter v. Sec'y of Health & Human Servs.,* 21 Cl.Ct. 651, 653 (1990) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *Davis v. Sec'y of Health & Human Servs.,* 54 Fed.Cl. 230, 233 (2002).

Here, the Court reviews *de novo* the Special Master's decision regarding the legal issue of whether Ms. Snyder's estate is eligible for compensation under 42 U.S.C. §§ 300aa–15(1), (3), and (4), in addition to the $250,000 death benefit under 42 U.S.C. § 300aa–15(a)(2).

### B. *Purpose of the Vaccine Act*

Congress enacted the Vaccine Act in 1986 "to achieve optimal prevention of human infectious diseases through immunization and to achieve optimal prevention against adverse reactions to vaccines." 42 U.S.C. § 300aa–1. The Vaccine Act includes a National Vaccine Injury Compensation Program, "under which compensation may be paid for a vaccine-related injury or death." 42 U.S.C. § 300aa–10(a). The Program is administered by the Secretary of Health and Human Services. An individual seeking compensation under the Program must establish by a preponderance of the evidence that the injury or death was caused by a vaccine for which compensation is authorized. 42 U.S.C. §§ 300aa–11(c)(1), –13(a)(1).

The legislative history of the Vaccine Act shows that Congress perceived a crisis in the administration of childhood vaccination programs. Some of the vaccines resulted in injury or death of children recently inoculated. Vaccine manufacturers were experiencing increased litigation costs defending against claims resulting from these injuries.

These costs, combined with the costs of settlement or damages awards, caused many manufacturers to consider withdrawing from the vaccine market. For claimants, causation often was difficult to prove, leaving the injured child or his family with no compensation under the traditional tort system. H.R.Rep. No. 99–1780, at 1–3 (1985); H.R.Rep. No. 99–908, pt. 1 (1986).

Congress thus addressed two concerns in enacting the Vaccine Act. The first was "the inadequacy ... of the current approach to compensating those who have been damaged by a vaccine." H.R.Rep. No. 99–908, pt. 1, at 7. The second was "the instability and unpredictability of the childhood vaccine market." *Id.* Congress instituted the compensation program with the view that awards would be "made to vaccine-injured persons quickly, easily, and with certainty and generosity." *Id.* at 3. The program is to be "fair, simple, and easy to administer." *Id.* at 7. *See also Capizzano,* 440 F.3d at 1327 n. 7 (citing *Lowry v. Sec'y of Health & Human Servs.,* 189 F.3d 1378 (Fed.Cir.1999)); *accord Knudsen v. Sec'y of Health & Human Servs.,* 35 F.3d 543, 549 (Fed.Cir.1994); *Schafer v. American Cyanamid Co.,* 20 F.3d 1, 2 (1st Cir.1994) (Breyer, J.).

Vaccine-injured persons are required to file their claims initially under the Vaccine Act's compensation program. 42 U.S.C. § 300aa–11(a)(2). They may withdraw from the program after specified time periods, *id.* § 300aa–21(b), or they may reject the Vaccine Act judgment and elect to file a civil action. *Id.* § 300aa–21(a). The Congressional objective was to encourage petitioners to seek redress under the Vaccine Act, rather than filing civil actions against vaccine manufacturers.

### C. *The Vaccine Act's Compensation Provisions*

The Special Master began his analysis of the Vaccine Act's compensation provisions by examining the sovereign immunity doctrine. He sought to determine under statutory construction principles if the Act should be interpreted "strictly" and "narrowly," or whether he should apply a "liberal" interpretation to give effect to this "remedial" stat-

ute. (Remand Decision at *8–16). However, a better starting point may have been a plain reading of the Act. "The first step in determining the scope of a statute is to give words their ordinary meaning, as it is assumed that the legislative purpose is reflected by the ordinary meaning of the statutory language." *McGowan v. Sec'y of Health & Human Servs.,* 31 Fed.Cl. 734, 738 (1994) (citing *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *Goodwin v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 1, 3 (1992)).

The Vaccine Act's compensation provisions are found in 42 U.S.C. § 300aa–15, where Congress set forth the scope of recovery available to petitioners who establish entitlement. Subsection (a) governs the compensation for vaccinations administered after October 1, 1988, while subsection (b) addresses compensation for vaccinations given prior to that date. Since Ms. Snyder received her MMR vaccination in 1992, this case is governed by the provisions of 42 U.S.C. § 300aa–15(a).

Subsection (a) begins with a statement that "[c]ompensation awarded ... for a vaccine-related injury or death ... *shall include the following[.]" Id.* (emphasis added). Four numbered subparts follow, each providing a different category of compensation. Subpart (a)(1) covers actual unreimbursable expenses resulting from a vaccine-related injury. Subpart (a)(2) provides for a vaccine-related death benefit of $250,000. Subpart (a)(3) covers lost earnings resulting from a vaccine-related injury. Subpart (a)(4) provides for pain and suffering resulting from a vaccine-related injury not to exceed $250,000. 42 U.S.C. § 300aa–15(a)(1)–(4).

The ordinary meaning of the phrase "shall include the following" allows recovery under any and all of the categories of compensation listed in subparts (1) through (4) that apply to the petitioner's circumstances. The plain language provides that where a petitioner suffers a vaccine-related injury, she may recover under subparts (1), (3), and (4). Where a petitioner suffers a vaccine-related death, her estate may recover under subpart (2). There is nothing in these provisions suggesting that any of the four categories is an

exclusive form of recovery. The $250,000 death benefit is listed simply as the second category among four, any of which may apply in a given case. If Congress wanted to limit benefits in some further way, it would have explicitly so stated.

This plain reading of the statute also is compelling from a logical point of view. The Special Master acknowledged that the Petitioner's argument is "straightforward and appealing," and that "nothing in the statute *explicitly*" prohibits payment for both living and death benefits. (Remand Decision at *19). He observed that "[t]his argument is particularly appealing in the context of this case, in which it has been determined that Ms. Snyder lived with a severe vaccine-related injury *for more than 13 years* prior to her vaccine-related death." *Id.* (emphasis in original). In such circumstances, the Special Master acknowledged, "it seems intuitively unfair to deny Ms. Snyder's estate any compensation for the 13–year period between Ms. Snyder's injury and her death." *Id.* at *24.

### D. *The Plain Language Supports the Remedial Purpose of the Act*

Respondent contends that a petitioner who dies from a vaccine-related cause may only recover the $250,000 death benefit. Respondent relies upon language in 42 U.S.C. § 300aa–15(a) providing compensation for a "vaccine-related injury *or* death," and legislative history specifying that "[a]llowable death benefits for a vaccine-related death are set at a level of $250,000." July 2006 Response at 4 (citing H.R.Rep. No. 99–908, at 21 (1986)). Respondent maintains that a petitioner either is entitled to damages under Section 15(a)(1), (3), and (4) when the petitioner is living, or the estate is entitled to the $250,000 death benefit under Section 15(a)(2). These contentions are not supported by the plain language of the statute, and are contrary to the remedial purpose of the Vaccine Act. There is nothing in the Act to suggest that a vaccine-injured person such as Ms. Snyder must forfeit a legitimate claim for lifetime economic losses, in this case for $554,000, if she dies while her claim is still pending.

The Court's conclusion that vaccine petitioners may recover both a death benefit and lifetime economic losses is supported by a comparative review of the remedies available at state law. In order to be effective, the Vaccine Act ought to be as generous as the civil system it seeks to replace. As noted, under 42 U.S.C. § 300aa–21(a), petitioners may elect to opt out of the Vaccine Program and "file a civil action for damages for such injury or death[.]" In Ms. Snyder's home state of New Jersey, for example, plaintiffs may seek both a death benefit under that state's wrongful death statute [8] and lifetime economic losses under a state survival statute.[9] The two types of statutes address distinct harms. See Stuart M. Speiser & James E. Rooks, Jr., Recovery for Wrongful Death § 1:13 (4th ed.) ("Conceptually, the survival statute is quite different from the wrongful death act, as each provides a remedy for a different kind of loss.").

As Petitioner notes, wrongful death acts exist in all 50 states. (June 2006 Motion for Review at 11 (citing 22A Am.Jur.2d Death § 4) ("At the present time there are statutes in all American states that create a right to recovery for wrongful death.")). See also Moragne v. States Marine Lines, Inc., 398 U.S. 375, 390, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) ("In the United States, every State today has enacted a wrongful-death statute."). Survival statutes are nearly as universal: "[t]he majority of statutes, either expressly or by construction, permit both the survival action for fatal injuries and the wrongful death action to be maintained, and under many of these statutes the two actions may or must be consolidated or joined for trial." Id. Moreover,

[w]here a state's statutes provide for both a cause of action for wrongful death and a right of recovery which accrues during the lifetime of deceased for medical expenses, pain and suffering, they are two separate and distinct causes of action, and plaintiff may therefore challenge the one recovery without affecting his right to the other, and this includes the right to a new trial of one cause of action independent of the other.

Id. Under Respondent's view of the case, the Vaccine Act would not achieve its goal, because petitioners would opt out of the Vaccine program to pursue remedies against the manufacturer in a more generous forum.

Limiting a deceased petitioner to a death benefit, as Respondent argues, also would create unintended incentives. In Ms. Snyder's case, for example, where her lifetime economic losses exceeded $500,000, Respondent conceivably could "save" a quarter million dollars simply through delaying resolution of the case in the expectation that the petitioner might soon die. Additionally, in a case as here where lifetime losses greatly exceeded the allowable death benefit, Respondent would be motivated to show that the petitioner's death *was* vaccine-related, while petitioner would want to show that the death *was not* vaccine-related. Such a reversal of roles could not have been what Congress intended. These unintended incentives are eliminated through the plain reading of the Act's compensation provisions, allowing recovery for all categories that apply.

### E. Relevant Case Law

On the facts presented here, where the Petitioner received a vaccination in 1992,

---

8. New Jersey's wrongful death statute provides:

When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime.

N.J.S.A. 2A:31–1.

9. New Jersey's survival statute provides:

Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.

In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

N.J.S.A. 2A:15–3.

filed a timely petition in 1994, and died from vaccine-related causes in 2005 while her action was still pending, *Lawson v. Sec'y of Health & Human Servs.*, 45 Fed.Cl. 236 (1999) and *Andrews v. Sec'y of Health & Human Servs.*, 33 Fed.Cl. 767 (1995), appear most instructive.

In *Lawson*, an infant, Jennifer Lawson, received a third diphtheria-pertussis-tetanus (DPT) vaccination in May 1977. Within hours, she began to sleep for extended periods, became difficult to arouse, and showed a general lack of response to environmental stimuli. Within two to three weeks, she began slumping over. Approximately three weeks after the vaccination, Jennifer fell from a chair and bruised her head. Thereafter, she was unable to hold her head upright, and lost her ability to roll over and grasp objects. Her condition never improved. She lost all motor skills and became mentally retarded. She was confined to a wheelchair, supported totally, or bedridden. She died in 1992 at age 15. *Lawson*, 45 Fed.Cl. at 236–37.

Jennifer Lawson's parents filed their initial Vaccine Act petition in October 1990, prior to Jennifer's death. Through supplemental submissions, petitioners claimed both a vaccine-related injury and a vaccine-caused death. The Special Master denied any compensation. In vacating the Special Master's decision and remanding for further proceedings, our Court observed that petitioners may "be entitled to recover provable items of damages set forth in 42 U.S.C. § 300aa–15(b) . . . even if they are unable to prove that Jennifer's death was a sequela of an initial vaccine related injury." *Id.* at 237. The Court added that "[i]f, further, they could establish that Jennifer's death was 'vaccine-related,' 42 U.S.C. § 300aa–15(a)(2) incorporated in subsection—15(b), they could recover an additional $250,000," and concluded that "potential entitlement to compensation related to initial vaccine injury does not depend on whether eventual death was also vaccine related." *Id.* The Court finds the

*Lawson* decision compelling support for the ruling here. The fact that Jennifer Lawson's vaccination occurred prior to October 1, 1988, and thus falls under 42 U.S.C. § 300aa–15(b) instead of—15(a), is immaterial.[10] *Lawson* effectively holds that an eligible petitioner who dies while her claim is pending may recover both for lifetime economic losses and a vaccine-related death arising from the same vaccination.

*Andrews* also is supporting precedent. There, petitioners' daughter, Kristen Jo Andrews, suffered a residual seizure disorder and mental retardation from an August 1960 DPT vaccination. Petitioners filed their Vaccine Act petition in October 1990. Thereafter, in April 1993, before the amount of compensation had been determined, Kristen died from cardiopulmonary heart failure. Petitioners were unable to demonstrate a connection between Kristen's death and her vaccine injury. 33 Fed.Cl. at 768.

In April 1995, the Special Master held that "the plain language of the Vaccine Act permitted compensation for Kristen's actual pain and suffering from her vaccine-related injuries despite her death from non-vaccine causes." *Id.* Respondent filed a motion for review of the Special Master's decision, arguing that the Vaccine Act prohibits the estate of a decedent whose death was not vaccine-related from bringing or continuing a petition for vaccine injuries. *Id.*

The *Andrews* Court looked first to the plain meaning of the Act. "If the language of the Act is clear, it will be regarded as conclusive." *Andrews*, 33 Fed.Cl. at 768 (citing *Staples v. Sec'y of Health & Human Servs.*, 30 Fed.Cl. 348, 354 (1994)). The Court sustained the Special Master's finding "that nothing in the language of 'vaccine-related injuries' limits compensation to persons who are living at the time of award[,]" and that the Act "does not extinguish a properly filed claim if the vaccine injured person subsequently dies." *Id.* at 769. The Court characterized Respondent's argument

---

10. Although Section—15(b) is organized differently than Section—15(a), the plain language of Section—15(b) also permits recovery under the stated compensation categories for an eligible petitioner suffering both vaccine-related injuries and a vaccine-caused death. Section—15(b) incorporates by reference two compensation categories from Section—15(a)(1) and (2)—actual unreimbursable expenses, and the $250,000 death benefit.

that Section 15(a)(2) prohibits an estate from receiving an award other than the $250,000 death benefit for vaccine related deaths as "wholly without merit." *Id.* at 770. The Court concluded that:

> When the plain meaning of the Act is considered in conjunction with its history it is clear that Congress could not have intended the interpretation urged by respondent. There is nothing fair, expeditious or generous about an interpretation of the Vaccine Act that replaces a state law claim that would survive the death of plaintiff with a claim that would be extinguished upon the death of the claimant.

*Id.* at 771.

Notwithstanding the compelling authority of *Andrews* and *Lawson,* the Court acknowledges the general proposition that, under the doctrine of sovereign immunity, the Vaccine Act ought to be strictly construed. *See Brice v. Sec'y of Health & Human Servs.,* 240 F.3d 1367, 1370 (Fed.Cir.2001) (Courts should be careful not to extend Vaccine Act's statute of limitations beyond what Congress intended); *Martin v. Sec'y of Health & Human Servs.,* 62 F.3d 1403, 1405 (Fed.Cir.1995) (Jurisdictional grant to award attorneys' fees under the Act should be "narrowly construed"); *Schumacher v. Sec'y of Health & Human Servs.,* 2 F.3d 1128, 1135 n. 12 (Fed.Cir.1993) (Applying sovereign immunity principles of statutory construction to the Vaccine Act.) However, as the Special Master noted, the Court must not "assume the authority to narrow the [sovereign immunity] waiver that Congress intended." (Remand Decision at *9) (citing *Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)). *See also Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (A federal court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it."); *Johnson v. United States,* 163 F. 30, 32 (1st Cir.1908) (Holmes, J.) (In construing acts of Congress, "it is not

an adequate discharge of the duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before.").[11]

The Court applied a sensible approach to the sovereign immunity doctrine in *McGowan,* 31 Fed.Cl. 734. In construing whether a person who received a vaccination in Canada had "returned" to the United States not later than six months thereafter, as required by 42 U.S.C. § 300aa–11(c)(1)(B)(i)(III), the Court rejected petitioner's argument that a temporary physical presence in the United States satisfied the requirement. *Id.* at 740. To petitioner's argument that the Vaccine Act is remedial, and ought to "be construed to provide compensation to injured persons whenever possible," the Court answered that "this remedial aspect of the Vaccine Act refers to those claims that meet its jurisdictional requirements," and "[o]nly those petitioners who are eligible under the Vaccine Act can avail themselves of the remedial nature of the Vaccine Act." *Id.* at 740. The Court concluded that, when dealing with issues of jurisdiction, "the statute must be construed strictly, as it is a limited waiver of sovereign immunity." *Id.* Where, however, jurisdictional prerequisites are satisfied, as they are in this case, the Vaccine Act ought to then be interpreted by a plain reading of its terms, mindful of the Act's remedial intent.

Finally, two of Respondent's authorities deserve brief mention. First, Respondent places heavy reliance on *Sheehan v. Sec'y of Health & Human Servs.,* 19 Cl.Ct. 320 (1990), a vaccine-caused death case where the Court restricted petitioner to a $250,000 recovery. As noted in *Andrews,* "*Sheehan* was a vaccine related *death* case, not a vaccine related *injury* case." 33 Fed.Cl. at 770 (emphasis in original). Therefore, the Court finds *Sheehan* readily distinguishable. Second, Respondent cites the Vaccine Act's legislative history providing that "[a]llowable death benefits for a vaccine-related death are set at a level of $250,000." H.R.Rep. No. 99–

---

**11.** Previous Special Master decisions granting only a death benefit to a petitioner's estate appear to have "imported immunity back into a statute designed to limit it." *See Clifford v. Sec'y of Health & Human Servs.,* 2002 WL 1906520 (Fed.Cl.Spec.Mstr.2002); *Vijil v. Sec'y of Health*

& *Human Servs.,* 1993 WL 177007 (Fed.Cl. Spec.Mstr.1993). The Court is not persuaded by decisions that focus principally on the sovereign immunity doctrine at the expense of the plain language of the Act.

908, pt. 1, at 21 (1986). This pronouncement similarly relates only to a vaccine-caused death, *i.e.,* when a vaccine causes death, the recovery shall be $250,000. This passage does not say or suggest that a petitioner's death extinguishes pending claims for vaccine-caused injuries.

To summarize the above discussion, Barbara Snyder unquestionably is an eligible petitioner who asserted a timely claim in 1994 for lifetime economic losses caused by her 1992 MMR vaccination. Ms. Snyder died in April 2005, while her claim was still pending before the Court. *Lawson* and *Andrews* instruct that her claim for lifetime economic losses was not thereby forfeited or extinguished. The plain reading of the Act warrants this outcome. Resort to the sovereign immunity doctrine as a statutory construction tool is unnecessary where the intent of Congress is clear from the words of the Act. The parties agree that Ms. Snyder's death was vaccine-caused, and that her estate is entitled to the Act's $250,000 death benefit. To this sum should be added the lifetime economic losses.

### Conclusion

Based upon the foregoing, the Court vacates the Special Master's conclusion of law that Petitioner may only recover a death benefit in this case, but adopts the Special Master's findings of economic losses suffered by Petitioner, totaling $554,323.90. The Court enters judgment for Petitioner in the amount of $804,323.90, comprised of the $250,000 death benefit and the $554,323.90 in economic losses. The Clerk shall enter Judgment for Petitioner for $804,323.90.

IT IS SO ORDERED.